(C. D. 137)

ANSONIA COPPER & IRON WORKS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 3, 1939)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Joseph R. Jackson*, Assistant Attorney General (*William J. Vitale* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Detroit, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described on the invoice as "One Dismantled Copper Still with Condenser, Beer Heater, Slop Strainer, Receiving tanks, Cooler & Pipe Connections." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, plus an additional tax of 3 cents per pound under section 601 (c) (7) of the Revenue Act of 1932 as articles composed in chief value of copper. The plaintiff does not dispute the copper tax. However, it claims that the merchandise is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said tariff act as a machine and parts thereof not specially provided for.

A blueprint of the imported mechanism was admitted in evidence as Illustrative Exhibit 1. In addition the plaintiff offered in evidence the testimony of a single witness, Jacob Buchert, vice president and manager of the plaintiff corporation. No evidence was offered by the Government.

The witness testified that the imported merchandise when finally assembled constitutes an apparatus which makes a product known as high wine of an alcoholic proof of from 100 to 110 from fermented mash or beer sometimes known as wort, which is inedible; that this fermented mash or beer is pumped by a steam beer pump located at the base of the apparatus and marked "A" on the blueprint marked "Illustrative Exhibit 1." From thence it passes through a pipe to the beer heater marked "B"; that from there it goes into the beer chamber marked "C"; that from there it passes down over twenty perforated boiling plates marked "D" to a chamber marked "E"; that at this

point the slop is drawn out from the chamber marked "E" through the atmospheric overflow marked "F"; that during the passage over the plates marked "D" alcohol in the form of vapor rises and passes through certain perforations in the beer plates marked "G"; that eventually the alcoholic vapor reaches the heater marked "B"; that from there this low proof alcohol passes through a reflux marked "H" to the top of the chamber to be redistilled; that it then passes down by pipe to the condenser marked "K" where the vapor becomes liquid alcohol, flowing down to the wine tank marked "L"; that this low-proof wine is then pumped by the low-wine pump marked "M" into the third chamber from the top marked "N"; that these low wines after being charged into the chamber marked "N" are reboiled and pass through the system again and finally reach the high-wine tank; that at the base of the apparatus there is another water pump marked "O" which pumps water for cooling purposes into the condenser "K" through a long pipe; that in the right-hand top corner of Illustrative Exhibit 1 and marked "G" is a plan and section of the boiling plates; that each plate is perforated with approximately 4,500 holes, the diameter of each hole being three-eighths of 1 inch; that when these holes are placed horizontally as shown by the diagram marked "P," the beer being pumped into the "bay plate" marked "R" travels six feet across to what is called the "down" pipe marked "S"; that the beer does not drop down through the holes of the plates because of the steam pressure coming from the exhaust steam from the pumps, the steam inlet being marked "V"; that in the operation of the entire apparatus the forces of gravity and steam pressure are used; that steam is used in the beer pump and the low-wine pump marked "A" and "M," respectively, on said blueprint; that atmospheric pressure is used in the apparatus at the atmospheric overflow marked "F" on said blueprint; that there is in the apparatus as assembled a vacuum valve and also a series of test valves marked "W" on said blueprint; that the apparatus or still represented on the blueprint (Illustrative Exhibit 1) cannot be operated without the use of the pumps hereinbefore described; that the safety valve in the apparatus operates automatically and is essential to the operation of the apparatus.

On cross-examination the witness testified that the vacuum valve marked "Z" on Illustrative Exhibit 1 has mechanical movements although it is not a machine; that the sole purpose of the still or apparatus is to separate alcohol from the fermented wort or mash; that this is accomplished by the heating process resulting from steam pumped from the bottom and passing through the whole plant; that no power is generated by the plant except the steam in the bottom chamber to carry the vapors off and that the entire apparatus was imported without pumps.

On redirect examination he testified that if it were not for the steam pressure the apparatus could not work; and that each still must have a pump working twenty-four hours a day in order that the apparatus may function.

Upon this record counsel for the Government in his brief filed herein contends that said apparatus is not a machine within the meaning of paragraph 372 of the Tariff Act of 1930, relying on the fact that the plaintiff's witness in answers to questions by the court testified that in his opinion it was not a machine but an apparatus, and the further fact that the pumps did not accompany the other parts at the time of importation but were assembled with said parts in the completed plant after importation.

It appears, however, from an examination of the blueprint admitted in evidence as Illustrative Exhibit 1 that all three of the pumps, marked "A", "M", and "O" on said blueprint, are evidently integral parts of the entire distilling apparatus and the testimony is uncontradicted that the apparatus itself could not function without them.

Moreover, in addition to the pumps, the apparatus itself contains automatic valves and a condenser which would seem to make the entire apparatus a machine within the meaning of paragraph 372 under previous decisions of this court and of the Court of Customs and Patent Appeals.

In the very recent case of *John A. Steer & Co.* v. *United States,* 24 C. C. P. A. 293, T. D. 48737, the appellate court had before it several shipments of merchandise comprising when assembled a complete anhydrous ammonia plant, composed of compressors, heaters, tanks, condensers, and refrigerators, used in the production of liquid anhydrous ammonia from two gases, hydrogen and nitrogen, by a process of synthesis. With respect to said ammonia plant the court said:

There can be no question, under the authorities, but that the apparatus is a machine, within the purview of said paragraph 372, *United States* v. *Van Bourgondien Bros.*, 16 Ct. Cust. Appls. 420, T. D. 43135; *United States* v. *Sheldon & Co.*, 15 Ct. Cust. Appls. 308, T. D. 42484; *United States* v. *G. W. Sheldon & Co.*, 21 C. C. P. A. (Customs) 392, T. D. 46913.

We feel that the above authority is equally controlling in the present case. We therefore hold that the articles assessed with duty at the rate of 45 per centum ad valorem under said paragraph 397 and which are covered by this suit are properly dutiable at 27½ per centum ad valorem under paragraph 372 of said act as machines and parts thereof not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claim is overruled. Judgment will be rendered accordingly.