BEFORE THE SECOND DIVISION, NOVEMBER 14, 1940

No. 44728.—Protest 6694–K of Baker Perkins Co., Inc. (New York).

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "2 Thomson 'Matchless' Steampipe Hotplates." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397, Tariff Act of 1930, as manufactures of metal not specially provided for. It is claimed that said merchandise is properly dutiable at the rate of 27½ percent ad valorem under paragraph 372 of said act as machines not specially provided for, or, alternatively, at the rate of 35 percent ad valorem under paragraph 319 (b) of said act as ovens of the kind therein mentioned. However, the only claim apparently relied on by the plaintiff is that alleged under said paragraph 372.

William E. Inch, the only witness who appeared herein testified that he has been in the employ of the plaintiff-corporation for 35 years; that he is the engineer who supervises, erects, and services all equipment in the eastern territory; and that he had charge of the installation of the present importation in the plant of the S. B. Thomas Bakery at Long Island City, N. Y.

He then produced a drawing of said merchandise which was admitted in evidence as plaintiff's illustrative exhibit A. Using the exhibit to illustrate his testimony, he stated that each of the imported devices consists of a brick furnace ("A"), a series of endless steel tubes ("B") which form the circulation or heating medium and travel along the baking surface ("C"); that the heating unit is insulated by an insulating material ("D"); that the furnace ("A") operates from a gas supply through gas lines ("F") controlled by a thermostat ("G") to three atmospheric burners ("H"); and that the thermostat ("G") controls the supply of gas to the burners ("H") so as to give the temperature required for baking.

He further testified that the tubes ("B") contain distilled water which is poured into the tubes, but does not fill them, leaving some space for the formation and expansion of vapors; that the tubes are then hermetically sealed; that there is a pressure gauge, not shown on the exhibit, but which was actually installed in position ("K"); and that the furnace ("A") is connected to a flue or chimney by the smokestack ("M") which runs the length of the plate. He stated that the thermostat ("G") is physically operated and consists of a thermocouple attached directly across the gas lines ("F"); and that the contraction and expansion of the

thermocouple operates a flap in the thermostat ("G") and thereby governs the amount of gas flowing through the lines to the burner.

On cross-examination he testified that the plate ("C") is 20 feet long by 2 feet 6 inches wide and is not an enclosed oven but is exposed to the air, more or less like an open grill; that the brick structure ("A") is 4 feet 6 inches high by 2 feet 6 inches wide and that the wall is quite thick so that the inside dimensions are about half of that; and that there are 10 tubes ("B") which are endless and run side by side making 20 heating surfaces in contact with the plate ("C").

The merchandise was constructed and designed to bake "Thomas English Muffins."

In their preliminary statement made at the hearing, counsel for the plaintiff insist that said apparatus responds to the definition of what constitutes a machine as set forth in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, to wit, "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion."

The plaintiff contends that in the imported apparatus energy in the form of gas is delivered through the mechanically operated thermostat and the appropriate gas lines to burners where the gas is burned and converted into heat energy; that the heat energy thus produced is transferred to the tubes containing water and converts the water into steam and sets up a circulation within the tubes; that the energy of the steam is then converted into a useful force by contact with the baking plate which performs the ultimate function for which the device was designed, to wit, the transformation of a ball of dough into an English muffin.

It is urged that such an apparatus is a mechanical contrivance which not only utilizes but also applies and modifies energy, and several decisions of this and of the appellate court are cited in support of that contention. One of the cases stressed as perhaps the leading authority on mechanisms of the kind here under consideration is *United States* v. *Van Bourgondien Bros.*, 16 Ct. Cust. Appls. 420, T. D. 43135. That involved a device used for sterilizing bulbs. It consisted of a steam boiler, a large vat containing a metal coil, and a lead, to which were attached regulating valves, extending from the boiler to the coil in the vats. Steam generated in the boiler passed through the lead and the regulating valves to the coil in the vat and heated the water. The flow of steam was controlled by the regulating valves, and, in that manner, the temperature of the water was regulated and controlled.

Of such a mechanism the court said:

We are of opinion that the article in question comes within the definition of a machine. It not only generates energy, but it modifies, utilizes, and applies it.

We are unable to agree with the contention of counsel for the Government that, in order to come within the definition of a machine, an article must have wheels or gears.

In support of the latter conclusion the court cited its decision in *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075, wherein a radio receiving set was held to be a machine.

To like effect was our decision in *Allen Forwarding Co. et al.* v. *United States*, T. D. 41506, G. A. 9123, 49 Treas. Dec. 706, wherein loud speakers and units or movements therefor were held to be parts of machines. See, also, *Adlanco Industrial Products Corp.* v. *United States*, T. D. 43159, 55 Treas. Dec. 126.

In *Atlantic Forwarding Co. et al.* v. *United States*, Abstract 9655, 56 Treas. Dec. 807, certain water gauges for steam boilers were held to be parts of machines, following the decision in *United States* v. *Van Bourgondien Bros.*, *supra.*

In *Todd Shipyards Corp.* v. *United States*, Abstract 25031, 64 Treas. Dec. 853, the imported articles were parts of a complete heating system known as a "Waste Steam Feed Heating System." It was disclosed that by means of certain heat-

ing elements attached to the base of a smokestack the waste heat from the boiler and the waste steam from the auxiliary machines in the engine room, which ordinarily go up the stack, pass through these heating elements and the water and condensed steam thus heated are carried as hot water to the boiler. In other words, heat which is ordinarily wasted was utilized to heat water for the boiler. The imported parts were held to be parts of machines not specially provided for. Note, also, our decision in *E. J. Gonet* v. *United States*, Abstract 25942, 64 Treas. Dec. 1065.

In the light of these and other decisions of like tenor we hold the merchandise invoiced herein as "2 Thomson 'Matchless' Steampipe Hotplates" to be properly dutiable at the rate of 27½ percent ad valorem under paragraph 372, Tariff Act of 1930, as machines not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.