(C. D. 781)

### F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 16, 1943)

*Wallace & Schwartz; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: A device referred to in the record as a "hog singeing machine," was imported at Port Huron, Mich., and was

classified by the collector of customs under paragraph 397 of the Tariff Act of 1930 as an article not specially provided for composed in chief value of metal, not plated with platinum, gold, or silver, or colored with gold lacquer. Duty was levied thereon accordingly at the rate of 45 per centum ad valorem.

While the plaintiff invokes various alternative claims, the only one pressed is that the article is dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372 of said act for "all other machines, finished or unfinished, not specially provided for."

The sole witness in the case testified in behalf of the plaintiff that he had been engaged for the past 20 years as a chemical engineer in the engineering division of Armour & Co. of Chicago; that he selects, specifies, and arranges for the purchase and installation of machinery of all kinds; supervises the operation and maintenance of mechanical equipment for the various packing plants of Armour & Co. located in Chicago and other cities throughout the country; and that the importation in question was shipped to their Kansas City packing plant where it is now installed and in operation.

For a description of the article we quote from the testimony of the witness as follows:

It is a furnace, a vertical cylindrical furnace lined with insulation and firebrick. It is divided into two halves vertically, and each half rests on a carriage that sets on flanged wheels. These carriages rest on rails, and the carriages are connected with a system of levers, so that when the operating lever is pulled the two halves of the carriage can either separate or be brought back together to form a perfect cylinder. In the bottom of each half there is a gas burner, and running through the top is a rail equipped with a chain conveyor. When they are operating the machine, a dressed hog carcass, which is suspended from a trolley which runs on this rail, is brought up to the machine, and the lever is operated to separate the two halves of the furnace. Then the chain conveyor is operated to bring the carcass into the furnace, the lever is operated again to close the two halves of the furnace around the carcass, so that at that point the conveyor is stopped and the carcass is allowed to stay in the flame in the enclosed furnace for the proper length of time, and then the levers are operated again to separate the two halves of the furnace, and the conveyor operated to take the carcass out. That is the complete cycle.

At the conclusion of the witness' direct examination, he identified a blueprint outlining a device exactly like the one in controversy. This was received in evidence as plaintiff's illustrative exhibit A.

On cross-examination the witness testified in part as follows:

X Q. The chain conveyor is nothing more or less than a pulley with a chain that has a hook on it.

A. There are two sprocket wheels with an endless chain around them, and this chain has fingers or projections at intervals.

X Q. The carcass is hooked onto those fingers?

A. It is on the trolley which runs along the rail. This chain operates immediately adjacent to the rail, and propels the trolley along the rail, the fingers do.

X Q. What was the hog suspended from?—A. From a rail.

X Q. Overhead rail?—A. Yes, sir.

X Q. On a chain, or on what?—A. On a trolley, and the conveyor pushes the trolley along.

It may be noted that the gas burner equipment, insulation, and firebrick lining for the furnace, did not accompany the shipment. But this circumstance is of no consequence in view of our conclusion reached herein.

The facts testified to by the witness are not disputed, and plaintiff contends that with this foundation the article is clearly within the meaning of the phrase "all other machines, finished or unfinished, not specially provided for" appearing in said paragraph 372.

In support of that contention reliance is placed upon the definition of the word "machine" laid down by the United States Court of Customs Appeals in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

Although the cited case did not directly present the question whether the merchandise before the court was a machine, nevertheless, that decision has been cited and applied in many subsequent cases, of which those cited *infra* are examples. In a word, the cited decision has been accepted as the leading authority in customs cases as a guide in determining whether a given article properly may be classified as a machine.

The definition of a "machine" there adopted by the court is stated to be "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion."

From the evidence before us we are of the opinion that the importation is obviously a "mechanical contrivance," and moreover, that in its operation it utilizes and applies energy or force for the transmission of motion. It utilizes not only the force applied to the hand chain (depicted on the blueprint, illustrative exhibit A) which operates the chain conveyor used to carry the carcass to and from the furnace, but force is transmitted by pressure upon a lever in such manner as to exert a pulling and pushing movement to the two halves of the furnace in opening or closing it.

In the light of these circumstances we shall not concern ourselves with the further contention of plaintiff "that the machine also utilizes heat, which is energy." Consequently, we deem it unnecessary to discuss the case of *Baker Perkins Co., Inc.* v. *United States*, 5 Cust. Ct. 393, Abstract 44728, also relied upon in plaintiff's brief, which relates to the classification of a thermostatically controlled gas furnace. The other considerations to which we have referred are, in our opinion, sufficient to bring the present contrivance within the purview of the definition of a machine in the tariff sense, as judicially enunciated in the *Simon* case, *supra*. See also *United States* v. *Cottage Creamery Co.*, 22 C. C. P. A. (Customs) 290, T. D. 47346; *United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. (Customs) 168, T. D. 49271; *Keith Dunham*

*Co.* v. *United States*, 26 C. C. P. A. (Customs) 250, C. A. D. 24; *United States* v. *Dyson Shipping Co., Inc., et al.,* 29 C. C. P. A. (Customs) 148, C. A. D. 184.

In support of its contention that the importation is not a mechanical contrivance and does not utilize, apply, or modify energy or force, or transmit motion, the Government cites the following cases in which various contrivances were held not to be machines: *United States* v. *Reid & Co.,* 17 C. C. P. A. (Customs) 253, T. D. 43675, involving steam separators consisting of tanks in which steam traveling in a circular path, of its own force, threw out drops of water of condensation; *United States* v. *Klingerit,* id. 472, T. D. 43931, relating to metal valves used solely in regulating the flow of liquid or steam; *United States* v. *McNab,* 21 C. C. P. A. (Customs) 407, T. D. 46928, concerning torsion meters which when affixed to the propeller of a vessel, and by means of a series of mirrors and lights, were used to determine the horsepower of the engine driving the propeller shaft; and *United States* v. *Race Co.,* 22 C. C. P. A. (Customs) 327, T. D. 47362, on dialysers, consisting of a metal tank fitted with frames upon which were stretched cotton bags as membranes used to reclaim pure caustic soda from impure caustic soda.

A careful examination of those authorities satisfies us that none of them presents a factual analogy to the case before us. Hence, the views expressed in this opinion are not opposed to the legal principles which controlled the results in those cases.

We find as a fact that the importation in controversy is a mechanical contrivance which utilizes and applies energy or force and transmits motion. Hence, we conclude as a matter of law that the device is a machine, finished or unfinished, within the intendment of paragraph 372, *supra,* as judicially defined in the *Simon* case, *supra.* Accordingly, we hold that it is dutiable at the rate of 27½ per centum ad valorem under the provision in said paragraph for "all other machines, finished or unfinished, not specially provided for" as alleged by the plaintiff. That claim is therefore sustained; all other claims are overruled.

Judgment will be rendered accordingly.