(C. D. 874)

CRIBARI & SONS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 25, 1944)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

LAWRENCE, Judge: A certain pot still, imported from France, was assessed with duty at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for, if composed wholly or in chief value of * * * iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured * * *.

Plaintiff contends that the importation is properly dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372 of said act for "all other machines, finished or unfinished, not specially provided for." Although the protest alleges, as an alternative claim, that the merchandise is dutiable at the rate of 35 per centum ad valorem under paragraph 353 of said act as an article having as an essential feature an electrical element or device, that contention was not pressed by plaintiff, and since it is wholly unsupported by evidence it need not here be considered.

At the trial a diagram of the imported still was marked in evidence as illustrative exhibit A.

Alex Pancrazi, the sole witness herein, testified that he has been employed by the plaintiff for 10 years and at the time of this importation was assistant chemist; that the plaintiff operates a winery and rectifying plant and manufactures cordials and brandies and also engages in the redistillation of brandies, a process in which the pot still in question was used under his supervision, and that he superintended the installation of the imported still in plaintiff's place of business.

He further testified that the importation comprised an entire still consisting of a pot still, preheater, condenser, hoist, and tilting device; that he supervised its operation for about 4 years; and that all parts of the still were imported except possibly a pipe "leading from the steam to the still" and the steam regulating gauge.

Aided by the diagram (illustrative exhibit A) and an examination of the testimonial record, it appears that the still is circular in shape, about 4 feet in diameter, has a capacity of 158 gallons, and has a double-jacketed bottom equipped with an inlet and outlet through which steam passes to heat the liquid in the still.

The cover of the still is conical in shape and weighs between 60 and 80 pounds. It has a coupling at the top to which is attached a pipe to convey vapors from the still to the preheater, from which the contents pass to the condenser and receiving tank.

The still is suspended on two pivot points, and when it is desired to clean or to fill the still, the cover is raised by means of a chain and pulley arrangement with hook attachment. An immovable handle or lever enables the still to be tilted for cleaning operations.

Apparently the only movable articles in the shipment are the chain and pulley with hook attachment for raising and lowering the still cover. But these are detached and perform no function in the actual operation of the still.

With a view to supporting the contention that the imported apparatus is a machine in the tariff sense of the term, counsel for plaintiff, in their brief filed herein, insist that this pot still—

utilizes energy in the form of heat to vaporize the product to be distilled and condenses the resulting vapor by means of passing through a coil suspended in cold water.

Further, it is urged that—

The preheater which is an integral part of the whole, served to conserve and utilize heat from the vapor which otherwise would have been wasted in transferring it to the brandy to be distilled in the next operation.

And that—

In addition to the ordinary factors of a pot still, there were the mechanical contrivances for tilting the pot still in order to clean and empty it, and the mechanical hoist consisting of pulleys and a chain which was necessary to raise and lower the cover of the still.

Hence, counsel insist that "These factors of the machine clearly bring it within the principles established by this court in the case of *F. W. Myers & Co., Inc.* v. *United States*" (11 Cust. Ct. 5, C. D. 781).

But as we view it, the cited case is here readily distinguishable. The mechanism there in controversy was a hog singeing machine consisting of a cylindrical vessel divided into two parts resting on wheels, the parts being opened or closed by means of a movable lever. Moreover, an overhead trolley with a pulley and chain arrangement served to convey hogs to the cylindrical chamber where they were singed. It also appeared that the movable mechanical parts necessarily functioned in the actual operation of the machine itself, and without them the mechanism could not perform the purpose for which it was designed and constructed.

In the present importation neither the chain and pulleys which raise and lower the still cover nor the handle by which the still is tilted for cleaning purposes in any way function in the actual operation of distilling or redistilling brandy or other liquids. While the chain and pulley equipment may be, and probably are, important accessories to the still, that fact would not necessarily constitute them parts of the still. A jack does not become a part of an automobile merely because its use is essential in raising the car to change tires.

What constitutes a "part" of an article for tariff purposes was judicially enunciated in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. The court said:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component

part, without which the article to which it is to be joined, could not *function as such article.* *Welte & Sons* v. *United States,* 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer Inc.* v. *United States,* 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker,* 16 Ct. Cust. Appls. 548, T. D. 43266.

Significantly, the court added:

> The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.,* 11 Ct. Cust. Appls. 540, T. D. 39680.

In applying the stated principles to the camera tripods there before it, the court said:

> We are of opinion, therefore, that, although it may be necessary to use *tripods* as *supports* for the involved *cameras,* tripods are not, for that reason, integral, constituent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are designed to be used together, one as a support for the other, and that they are chiefly so used.

Tested by the stated applicable rule, we are satisfied that, in the tariff sense of the term, the said pulley and chain hoist is not a "part" of the imported pot still, and we so hold.

It remains to be determined whether the still proper, in and of itself, is a machine within the definition relied upon by plaintiff, namely, "A mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion." *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537.

It may well be, as alleged by plaintiff, that the still "utilizes energy in the form of heat to vaporize the product to be distilled and condenses the resulting vapor by means of passing through a coil suspended in cold water." But is it not the function of the ordinary boiler to generate steam which is transmitted through tubes or pipes to be utilized to supply heat, power, etc.? The term "boiler" is defined in Webster's New International Dictionary [1933 Edition] as "a strong metallic vessel in which steam is generated for driving engines." And in Knight's American Mechanical Dictionary, Vol. I, page 319, we find the following:

> *boiler.* A vessel in which liquid is boiled.
>
> 1. Household-boilers are *kettles, saucepans,* and *clothes-boilers.*
> 2. The boiler for raising steam may be fairly called a *steam-generator.* * * *
> 3. The dyer's boiler is called a *copper.*
> 4. That of the sugar-worker is a *pan.*
> 5. That of the distiller, a *still.*
> 6. The chemist's boiler may be a *retort, alembic,* etc.
> 7. Lard and tallow rendering is performed in a *digester,* or *tank.*

The latter authority (vol. III, p. 2384) says of a "still":

In its most general sense, an apparatus by which the volatile matters which enter into the composition of certain substances are eliminated by means of heat, being usually recondensed in their own proper form. This includes apparatus for extracting tar, etc., from wood.

In a more restricted sense, it is applied to apparatus for extracting and condensing the more volatile parts of liquids, as alcohol from saccharine solutions which have undergone the vinous fermentation.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The common still consists of a retort, or still proper, in which the substance is heated, and a condenser called a worm, on account of its usually having a spiral shape. The retort is generally made in two parts; the *pan* or *copper*, to which heat is applied, and the *head*, which is removable. \* \* \* It is made in some cases of earthenware, but more generally of copper, plain or electroplated with silver; for some special purposes of platinum, and for others it may be of iron or glass.

Whatever kindred relationship there may be between the terms "boiler" and "still," we doubt that either of them, ordinarily, may be regarded as a "mechanical contrivance," as those words were used by the court in the *Simon, Buhler & Baumann* case, *supra*. We are, therefore, of the opinion that the distillation process performed by the imported still is not the result of a mechanical operation.

In *United States* v. *J. Reid & Co., Inc.*, 17 C. C. P. A. (Customs) 253, T. D. 43675, the merchandise in controversy was thus described by the court:

The articles in question are devices designed to be set inside steam boilers to separate the moisture from the steam. They are so built that the steam, in passing through them, moves in a circular path, by means of which the drops of water are thrown to the outside of the devices, and are drawn off and separated from the steam. The steam circulates by means of its own force. The devices are stationary when in use and are attached to the boilers.

The provision invoked by the importer was that providing for "other centrifugal machines for the separation of liquids or liquids and solids" in paragraph 372 of the Tariff Act of 1922. In disposing of that contention the court held that "the device in question is, in our judgment, no more a centrifugal machine than the *worm of a still* would be," [italics supplied] and then added—

The separators involved here can not, in our judgment, be included within the term "machines" as defined by this court in *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537: "A mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion." It is no more so than was the mash filter involved in the said *Simon, Buhler* case. Nor is there anything to show that it is a part of any such machine.

In *United States* v. *Race Co.*, 22 C. C. P. A. (Customs) 327, T. D. 47362, so-called dialysers were held not to be machines in the tariff sense. They consisted of metal tanks, wire grids, wire-mesh nets, cotton bags or diaphragms, and the necessary fittings and connec-

tions, used for the extraction of pure caustic soda from a solution of impure caustic soda. This extracting process was accomplished, to quote from the syllabus of the decision of the court—

by a "force [osmosis] which utilizes in the dialyser the principle that two solutions of different strengths when placed in contact with one another will cause one of the dissolved substances in that solution to try to go into the other solution," * * *.

The court then propounded and answered the question at issue as follows:

Are the dialysers before us here such machines? We think not. They constitute only receptacles in which the force of osmosis is permitted to operate. They are no more than a tank in which a membrane is suspended, separating a body of clear water and a body of impure caustic soda in solution. That osmosis is a force cannot be doubted, but so is gravity, and chemical affinity, and catalysis, and condensation. Certainly, however, a tank or container in which these natural forces are permitted to operate, *without mechanical manipulation or assistance*, does not raise such a tank or container to the dignity of a machine. Here these imported grids and nets do nothing more than suspend the cloth sacks, which operate as membranes, in the tank. Thenceforth, osmosis proceeds. * * *. [Italics supplied.]

In the course of its opinion the court cited *Wm. A. Bird* v. *United States*, 55 Treas. Dec. 884, T. D. 43445, as "An interesting case on the subject in the trial court." It appears that that case involved "certain pipes, valves, and fittings, and electrodes for electrolytic and distillation tanks." They were classified for duty as manufactures of graphite, porcelain, and metal, and were claimed to be dutiable as parts of machines. The claim had been denied by the trial court, from whose opinion the appellate court quoted, apparently with approval, as follows:

In our opinion this device does not respond to the tariff definition of a machine as set forth in *Simon* v. *United States* (8 Ct. Cust. Appls. 273, T. D. 37537). The converting process that it performs is accomplished by a chemical force which in no way employs energy or force in a mechanical way. In other words, this device fails in the first essential of a machine within the tariff interpretation of the term, to wit, it is not a mechanical contrivance or device. * * *.

Then follows this very significant observation of the appellate court:

Judge Smith, in speaking for the court in the *Simon, Buhler & Baumann* case, *supra*, was not attempting to lay down a hard and fast definition for the word "machine," as a result of which every article that utilized, applied, or modified energy or force, or transmitted motion, must be classified as a machine. In addition to this, it must be "a mechanical contrivance." What is or is not such a mechanical contrivance depends upon the facts in each case. This factor was appreciated, and expressed by the trial court in the *Bird* case, *supra*, in the quoted excerpt.

We have, on several occasions, indicated that the language in the *Simon, Buhler & Baumann* case, *supra*, must be given a reasonable meaning and not

be too strictly and closely construed. *United States* v. *Reid, United States* v. *Klingerit, United States* v. *McNab, supra; United States* v. *Stern & Co.*, 21, C. C. P. A. (Customs) 246, T. D. 46777. See also *United States* v. *Laing, etc.*, 21 C. C. P. A. (Customs) 235, T. D. 46763.

The following two cases decided by this court are likewise persuasive that the present importation was properly classified by the collector as an article composed wholly or in chief value of metal, not specially provided for, rather than as a machine not specially provided for.

As early as March 16, 1927, we held, in *A. W. Fenton, Inc.* v. *United States*, 51 Treas. Dec. 1141, Abstract 2386, that a certain coffee-expressing apparatus was not classifiable as a machine not specially provided for under paragraph 372 of the Tariff Act of 1922, but was properly dutiable under paragraph 399 of said act as an article, not specially provided for, composed wholly or in chief value of metal, as classified by the collector. It appears from our opinion in that case that the device was described by the witness as follows:

It has a steel boiler encased with a nickel or other metal covering. It has a heating base, either gas or electric, which heats the water. And then it has the operating part of it, a dual valve, which serves the purpose of admitting the steam and water to the coffee. It generates steam, under a certain pressure the water is elevated to the point of the valves.

Further, as pointed out in the court's opinion—

When the water is heated to a pressure of 20 pounds as indicated by the steam gauge, the water is lifted by opening a valve to the height of the valve and is precipitated into the coffee, which is contained in a separate steel cup which is screwed to the valve. The opening of the valve first admits the superheated water, and then the steam is forced through the ground coffee making the infusion.

Citing the definition of a machine as set forth in the *Simon, Buhler & Baumann* case, *supra*, we said:

* * *. We are not prepared to say that a boiler which is used to boil water and which may be equipped with a valve or other means for permitting the steam and boiling water to circulate, is a machine as that term was contemplated by paragraph 372, and as judicially defined.

We reached the same conclusion in *E. L. McConnaughey & Co., Inc.* v. *United States*, 53 Treas. Dec. 950, Abstract 5607, which also arose under the Tariff Act of 1922, and was decided April 6, 1928. It involved a certain distilling apparatus which was classified by the collector under said paragraph 399 as an article, not specially provided for, in chief value of metal. It was there claimed by the importer to be properly dutiable under paragraph 372 of said act as a machine not specially provided for. Of that merchandise we said:

Plaintiff's witness described the apparatus as a tubular column about 30 feet high and about 44 inches in diameter made up of about seven chambers which

are divided into smaller compartments. Its sole use is to separate alcohol from the residue produced in the fermentation of yeast, a function accomplished by a heating process resulting from steam admitted through the bottom of the article.

The separation process performed by this device involves no mechanical action * * *.

We do not mean to say that, regardless of its design and construction, a distilling apparatus may not properly be classifiable for tariff purposes as a machine. As matter of fact, it was held, in *Ansonia Copper & Iron Works* v. *United States*, 2 Cust. Ct. 259, C. D. 137, that a certain wine still, which contained as integral mechanical parts thereof *three pumps* and automatic valves, was a machine, and as such dutiable under paragraph 372 of the Tariff Act of 1930. But that case is here readily distinguishable, since the imported still has neither pumps nor automatic valves as parts thereof.

On the established facts and the law applicable thereto we find and hold that the imported still is not a machine, as contemplated by paragraph 372 of the Tariff Act of 1930. Therefore, all claims of the plaintiff must be and they hereby are overruled and the decision of the collector is affirmed.

Judgment will be entered accordingly.