No. 64580.—Cara Supply and Joseph A. Paredes v. United States, protests 58/25773 and 58/25783 (San Francisco).

RAO, Judge: Certain imported coffee-brewing devices were classified by the collector of customs within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for articles wholly or in chief value of steel, not specially provided for, and, accordingly, were assessed with duty at the rate of 21 per centum ad valorem, or 20 per centum ad valorem, depending upon the date of entry.

It is claimed in the protests enumerated in the schedule, annexed to this decision and made a part hereof, which have been consolidated for purposes of trial, that said devices are machines, not specially provided for, within the purview of paragraph 372 of said act, as so modified, and, hence, are dutiable at the rate of 13 per centum ad valorem if entered for consumption between June 30, 1956, and June 29, 1957, or at the rate of 12 per centum ad valorem, if entered for consumption between June 30, 1957, and June 29, 1958.

The respective paragraphs of the Tariff Act of 1930, as modified, *supra*, insofar as here pertinent, provide as follows:

[PAR. 397.]
Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*) _____ 21% ad val.
20% ad val.

[PAR. 372.]
Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other (except \* \* \*) _____ 13% ad val.
12% ad val.

The only witness to testify at the trial of this action was called on behalf of plaintiffs. He was Thomas E. Cara, owner of Cara Supply. Although he was not shown to have any technical experience, his familiarity with the subject devices derived from his having imported them for a period of 14 years, and his having observed their use in various cities in the United States and Europe since 1915 or 1918.

This witness was not especially articulate, and the evidence which he gave was at times vague and confusing. However, with the aid of a photograph, plaintiffs' exhibit 1, and a diagrammatic sketch of its principal valve section, plaintiffs' exhibit 2, he offered a description of the apparatus, its method of functioning, and its uses. He stated that it was a "machine" for the preparation of a coffee drink known as caffe espresso, or a coffee or chocolate beverage called cappuccino. The instrument, which is roughly 40 inches high and about 25 inches wide, has various spigots and valves, in addition to the main valve shown on plaintiffs' exhibit 2, a pressure gauge, and an automatic safety valve for the release of excess steam pressure. The main valve is composed of a piston, axle, spring, seat, set screw, porthole, and steam intake eye.

In operation, water is heated in the boiler section of the unit. As it boils, steam fills the upper area. When the steam pressure reaches a minimum of 1 kilogram per square centimeter (14.2 pounds per square inch) as registered on the pressure gauge, the device is ready to operate. The manual lowering of a handle on the outside of the brewer causes the piston to rise, pressing the spring against the seat. Steam enters the valve chamber through the intake eye. Release of the handle releases the spring, which then presses down upon the piston. This forces the steam through the coffee grounds which are apparently at the base of the valve. By the time the piston returns to its original position, about 1½ ounces of heavy coffee drip from the unit.

Cara stated that the steam in the valve chamber serves to brake and make gradual the downward return of the piston. "It fills the lower chamber vacuum

and builds up a counter-action against the spring making the thing automatic; consequently, when the bomb [sic] goes up again, which forces the coffee down, it returns automatically. It is not a hand-maneuvered return. And, when the spring, when the handle is on the way up, that is when the pressure is built up in that lower chamber and the coffee droops out in drops."

The record further shows that the pressure gauge operates automatically. As steam presses in through a valve, it moves the gauge needle from zero to 2.5 kilograms, "and when it reaches that pressure, a safety valve opens automatically on the top of your tank and releases pressure that has been worked above the normal pressure needed by the machine."

In the opinion of the witness, whose qualifications to so state are questionable, these coffee brewers are machines which utilize force in their operation.

It is the contention of plaintiffs that the device thus described by their witness is a machine, as that term has been judicially defined in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, 277, T.D. 37537, to wit:

* * * a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion. * * *

To substantiate that position, counsel for plaintiffs invite our attention to a line of decisions in which mechanisms operating upon allegedly similar principles have been held to be machines. These include an apparatus for sterilizing flower bulbs, *United States* v. *Van Bourgondien Bros.*, 16 Ct. Cust. Appls. 420, T.D. 43135; a device for dispensing hand cream, *F. W. Myers & Co., Inc.* v. *United States*, 37 Cust. Ct. 256, C.D. 1832; a contrivance for lubricating railroad rails, *H. T. Kennedy Co., Inc.* v. *United States*, 33 Cust. Ct. 68, C.D. 1637; a waste steam feed heating system, *Todd Shipyards Corp.* v. *United States*, 64 Treas. Dec. 853, Abstract 25031; a muffin baking unit, *Baker Perkins Co., Inc.* v. *United States*, 5 Cust. Ct. 393, Abstract 44728; steam pressure regulators or valves, *Ruths Steam Storage Co., Inc.* v. *United States*, 64 Treas. Dec. 106, T.D. 46550; and instruments for determining and recording blood pressure, *E. J. Gonet* v. *United States*, 64 Treas. Dec. 1065, Abstract 25942.

It must be observed that the construction and action of the main valve of the instant merchandise possess characteristics which dovetail in many respects with the cream dispensers involved in the *Myers* case, *supra*, and the rail lubricators under consideration in the *Kennedy* case, *supra*. In all three, there was present in the chamber of the valve a piston and a spring, and external force applied to the unit caused the spring to press against the piston which, in turn, released, respectively, steam, cream, or grease. In each instance, the device was self-operating after the initial application of force.

Seemingly, the conclusion that both the cream dispenser and the rail lubricator were machines, by virtue of the quasiautomatic movement of the piston and spring, ought to prompt a similar conclusion in the instant case. Counsel for defendant urges, however, that the question is not one of initial impression and that since devices for making expressed coffee have previously been denied classification as machines, in the cases of *A. W. Fenton, Inc.* v. *United States*, 51 Treas. Dec. 1141, Abstract 2386, and *R. J. Goodwin's Sons, Inc.* v. *United States*, 60 Treas. Dec. 1330, Abstract 17639, the same result ought to be reached in this case.

The coffeemaking apparatus involved in the *Fenton* case was described in the court's original opinion, as follows:

The apparatus in question is described by the single witness who appeared herein as follows:

It has a steel boiler encased with a nickel or other metal covering. It has a heating base, either gas or electric, which heats the water. And then

it has the operating part of it, a dual valve, which serves the purpose of admitting the steam and water to the coffee. It generates steam, under a certain pressure the water is elevated to the point of the valves.

When the water is heated to a pressure of 20 pounds as indicated by the steam gauge, the water is lifted by opening a valve to the height of the valve and is precipitated into the coffee, which is contained in a separate steel cup which is screwed to the valve. The opening of the valve first admits the superheated water, and then the steam is forced through the ground coffee making the infusion.

Based upon the definition of the word "boiler" in Knight's Mechanical Dictionary, and upon the *Simon, Buhler & Baumann* construction of the term "machine," the court concluded that—

* * * We are not prepared to say that a boiler which is used to boil water and which may be equipped with a valve or other means for permitting the steam and boiling water to circulate, is a machine as that term was contemplated by paragraph 372 [Tariff Act of 1922], and as judicially defined.

We have examined the record in the case for more detailed information as to how that particular unit functioned and find that while it appears that the steam was released from the boiler by the opening of a valve, there is no evidence of a valve chamber with spring and piston such as the subject merchandise contains. As far as can be ascertained, the *Fenton* coffee brewer released steam when a valve was manually opened, and when the valve was manually closed, the flow of steam was stopped. The two devices differ so markedly as to render irrelevant to the instant issue the conclusion reached in the earlier case.

Counsel for defendant also cites our recent decision in the case of *A. B. Coppersmith and J. S. Walker* v. *United States*, 43 Cust. Ct. 312, Abstract 63284, wherein, in holding that certain trip lever wastes for controlling the flow of water from bathtubs were not machines, notwithstanding the presence of a spring in the mechanism, we stated:

Not every mechanism containing a spring which stores up energy, as the result of the operation of other movable parts, is necessarily to be regarded as a machine. In the case of *General Systems Service, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376, looseleaf binders, containing spring blades for keeping the binders open and closed, were held not to be machines within the rule of the *Simon, Buhler* case. In the case of *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046, so-called spring stake bunks, whose springs caused the stakes to be returned from a downward to an upright position, were also excluded from the provisions for machines. Whenever a spring is in compression or tension, energy must, of course, be stored in its coils, and, when the pressure or tension is relaxed, the stored up energy is naturally released. If, however, nothing more is accomplished by the spring than that it maintains a position into which a component of a unit has been placed, or permits the component to return to a previous fixed position, there is not such an application or utilization of energy as would require the unit to be embraced by any tariff provision for machines.

The case is clearly distinguishable. There, it was established that the sole purpose of the spring was to prevent the plunger from dropping, when the trip lever was in the open position, the plunger being heavier than the lever. It does not appear that the spring in the trip lever served any active role in the primary function of the device, which is to permit or restrict the flow of water from a bathtub. Moreover, we expressed the opinion that the trip lever wastes were such simple mechanisms as would not appropriately be deemed to be machines for tariff purposes.

In the instant case, the spring operates directly upon the motion of the piston and provides the force which expels the steam from the valve chamber. Once

the manual function of lowering the handle is performed, the mechanism is self-acting.

Since the mechanical principle of the main valve in the subject merchandise is the same in all essential respects as that of the aforementioned dispensers and rail lubricators, we are convinced that the involved coffee brewers are mechanical contrivances which utilize and modify energy or force and, hence, are machines within the contemplation of paragraph 372, as modified, *supra*, dutiable at the rate of 13 per centum ad valorem, if entered for consumption on or after June 30, 1956, but before June 30, 1957, or at the rate of 12 per centum ad valorem, if entered for consumption on or after June 30, 1957, but before June 30, 1958. To the extent indicated, the claim in the protests is sustained.

Judgment will be entered accordingly.