(C. D. 243)

SHELL PETROLEUM CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 1, 1939)

*Sharretts & Hillis* (*Arthur L. Tallman* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of Galveston, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of so-called Thyssen gravimeters. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines and parts thereof not specially provided for.

A sample representing said gravimeters was admitted in evidence as Illustrative Exhibit 1, and one of the two moving systems of said gravimeters was admitted in evidence as Exhibit 2.

Photographs of the gravimeters and one of the moving systems were received in evidence as Illustrative Exhibits A, B, and C. Illustrative Exhibit A is a photograph of the gravimeter set up as used in the field; Illustrative Exhibit B is a photograph of the gravimeter with the protective case removed; and Illustrative Exhibit C is a photograph of one of the two identical systems contained within the gravimeter.

By agreement between counsel Illustrative Exhibits 1 and 2 were withdrawn at the conclusion of the trial.

In addition to the samples the plaintiff offered in evidence the testimony of a single witness, Frank Goldstone, an employee of the plaintiff corporation in charge of geophysical explorations. After identifying the exhibits, he testified that as head of the geophysical department of the plaintiff corporation he had supervision of field crews in exploration for oil, and also in research activities. Being asked to explain in detail the construction of the gravimeter represented by Exhibit 1, he testified as follows:

The gravimeter comprises a tripod, to which is clamped the gravimeter proper. There is an outer rectangular case, inside of which there is an inner case, mounted on a base plate which carries three leveling screws. There is a vertical column which carries an upper rectangular box, to which are attached two levels, two micrometers, two agate planes, a clamping device, and two vertical water-jacketed tubes in water jackets on which are two thermometers. Inside this inner case are the moving systems, comprising each one quartz beam, two masses, attached to one of the masses, a reading scale. At one end of the beam, vertically above the center of the beam is a second mass, mounted on a column. At the center of the beam is an agate knife edge, and at the other end of the beam, a fiber attaches that end to a balance spring. On this same end of the beam is a hook for calibrating purposes.

The witness then described the operation of the gravimeter as follows:

The gravimeter is set up first by erecting the tripod. The gravimeter is set on the tripod and clamped to it by a clamping device. It is then leveled by means of the leveling screws and two spirit levels. The moving systems during transportation are clamped. For reading, they are released by unscrewing the beam clamping device. When the systems are unclamped, the agate knife edges are lowered until they rest on the agate planes, at which time the systems become free to spring, under the force of gravity, which are counterbalanced by the elasticity of the springs. The beams swing with a certain altitude, which can be read through the micrometer by means of graduated scales in the optical systems of the micrometers. From the four readings thus obtained, two from the micrometer, representing the strength of the swing of the beam, it is possible to compute the force of gravity at that location.

The witness then testified as follows:

By Mr. Tallman:

Q. What parts does the force of gravity cause set in motion on Ill. Exhibit C?—A. Actually five of these named parts, the quartz beam, the reading-mark scale, the two masses, and the spring.

Q. And are those same parts in the second system contained within the gravimeter, also set in motion in the same manner?—A. Identical.

\* \* \* \* \* \* \*

Q. Now, will you explain briefly how the gravimeter is used in practice in the field?—A. Its object is to map the gravity field; that is to say, the field of force caused by gravity. This field varies from place to place on the earth's surface. It is influenced by various geological structures, such as anticlines of massive limestone or sandstone. With this gravimeter, we can measure the field of force of gravity with sufficient accuracy to detect changes which are occasioned by these geological structures.

Q. After having done that, what practical use do you put your results to?— A. Well, from the results we can predict the probable location of the occurrence of oil.

Q. Then you drill?—A. Yes.

\* \* \* \* \* \* \*

Q. Mr. Goldstone, are you also engaged in laboratory research in the studying of the force of gravity?—A. I have directed such research.

Q. Are you doing that at present?—A. Yes.

Q. Will you explain briefly the apparatus as used in the laboratory for studying the force of gravity?—A. A much simpler device than this gravimeter can be used and is used in the laboratory. \* \* \*

Judge Dallinger. An instrument like this one is not used in the laboratory? The Witness. No, sir.

Judge Dallinger. It is not accurate enough, but it is used in the field? The Witness. The complexity of the instrument is designed for its use in the field rather than in the laboratory.

On cross-examination the witness testified as follows:

X Q. The moving part, Mr. Goldstone, consists of a rod, you say?—A. Quartz beam.

X Q. That is connected by an arm to a fulcrum?—A. There is clamped to the quartz beam, a knife edge which it is rested on, agate plane constituting the fulcrum.

X Q. And the force of gravity merely swings that quartz beam from one side to the other?—A. Yes.

Upon this record it is evident that the gravimeters utilize and apply the force of gravity in such a way that it can be visualized and in so doing employ various mechanical devices, including levels, beams, scales, masses, and springs, all of which parts operate mechanically. Therefore these gravimeters fall squarely within the definition of a machine, as laid down in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

The cited decision has been followed by the appellate court in numerous subsequent cases. In the case of *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075, the appellate court held

that radio receiving sets were machines within the meaning of paragraph 372 of the Tariff Act of 1922.

Also in the very recent case of *United States* v. *L. Oppleman, Inc.,* 25 C. C. P. A. 168, T. D. 49271, the decision of this court, holding aneroid barometers to be machines within the meaning of paragraph 372 of the Tariff Act of 1930, was affirmed.

Upon the established facts and the law applicable thereto, we hold that the gravimeters in question are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as machines not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled.