(C. D. 1600)

NORMAN G. JENSEN, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 25, 1954)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*John J. Antus*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff claims that certain new metal drums, imported empty, should have been classified pursuant to the provisions

in paragraph 328 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 328), as modified by the supplement to the General Agreement on Tariffs and Trade, 85 Treas. Dec. 64, T. D. 52423, and subjected to duty at the rate of 12½ per centum ad valorem.

The collector of customs classified the importation as hollowware which is provided for in paragraph 339 of said act (19 U. S. C. § 1001, par. 339), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and imposed duty at the rate of 20 per centum ad valorem.

The provisions of the statutes involved, so far as applicable, are here set forth.

Paragraph 328, as modified, *supra*:

Cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty_____ 12½% ad val.

Paragraph 339, as modified, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for (except articles composed wholly or in chief value of tin or tin plate, electric flatirons, fly swatters, illuminating articles, and household food grinding or cutting utensils other than meat and food choppers), whether or not containing electrical heating elements as constituent parts thereof:

     \*     \*     \*     \*     \*     \*     \*

   Not plated with platinum, gold, or silver, and not specially provided for:

 \*     \*     \*     \*     \*     \*     \*

     Other:
         Composed wholly or in chief value of iron, steel,
           copper, or antimony_____ 20% ad val.

The sole witness in the case, Clifford I. Rovick, was called by the plaintiff. He testified that he was the purchasing and credit agent for the McLaughlin Agricultural Chemical Co. of Minneapolis, the real party in interest, which is engaged in the packing and selling of weed-killing compounds; that he had been with this company or its subsidiaries for 21 years. He identified the merchandise as being 5 (imperial)-gallon lug-sealed drums and covers, explaining that "A lug seal is where the whole cover comes off and you fill it and then seal the cover on as compared to a closed-head drum where it is sealed on at the factory. * * * The covers are fitted with a 45 mm Upressit Nozzle. That is the cap on the top of the lug cover, the cap and seal." The drums are also equipped with a "pullout spout and embossed air vent." The witness described the pullout spout as—

\* \* \* a little metal tube when you pull out the cap, you pull out the tube which facilitates pouring of the liquid and then the embossed air vent is a little indentation on the top of the drum which is punctured when emptied.

A sample of the drums was received in evidence as exhibit 1. Its approximate dimensions are 15½ inches high and 11½ inches in diameter.

It appears from the record that after the drums are filled in this country with a weed-killing compound they are shipped to wholesalers and distributors who, in turn, sell them to farmers who use their contents to spray and kill weeds. Due to the nature of the chemicals contained in the compound, the drums can not be again used for the same purpose. As stated by the witness—

* * * it is a powerful chemical that we pack in there and if they use it for carrying water or any other type of insecticides, it will kill the flowers or foliage.

While the record is not clear upon the subject, it would appear that after the drums have been emptied of their contents they are destroyed, although a certain number of them may have fugitive uses around the farm. However, we do not deem this of importance in determining the issue before us.

Plaintiff practically concedes in its brief that these so-called drums fall within the common meaning of the term "hollowware," which is enumerated in paragraph 339, *supra*, citing *United States* v. *F. Weber Co., Inc.*, 25 C. C. P. A. (Customs) 159, T. D. 49266, but insists that they are more particularly provided for in paragraph 328, *supra*, which enumerates "Cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material," as defined in *Foxboro Co.* v. *United States*, 13 Cust. Ct. 326, Abstract 49868. In that case, this court held that certain iron bottles, each containing 34.5 kilos of quicksilver, were "vessels" within the common meaning of that term and that, inasmuch as they were used for holding quicksilver, a metal liquid, they came within the purview of paragraph 328, *supra*, as cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material.

In support of its conclusion, the court cited the following definitions from Webster's New International Dictionary, 1936 edition:

*flask n.* 2. *a*  A small bottle-shaped vessel for holding fluids, esp. one with a broad and flat body; as, a *flask* of oil or wine. *b*  The standard iron container in which mercury is sold, holding either 34.5 kg. or 75 or 76 lb. of mercury.

*vessel n.* 1.  A hollow or concave utensil for holding anything; a hollow receptacle of any kind, often circular in form, as a hogshead, barrel, firkin, bottle, kettle, cup, bowl, etc.

It should be noted that the competing paragraphs under consideration in that case, so far as the containers were concerned, were paragraphs 328, *supra*, relied upon by the plaintiff therein, and 397 (19 U. S. C. § 1001, par. 397), relating to articles of metal, which was adopted by the collector of customs.

In the case at bar, the competing provisions are those of paragraphs 339 and 328, *supra*.

Plaintiff in its brief also refers to the cases of *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, T. D. 31210; *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T. D. 31577; and *United States* v. *Bene et al.*, 6 Ct.

Cust. Appls. 523, T. D. 36145, which, the brief states, were cited in "the timely answer of the Collector to the protest" in support of his action. This statement seems to have resulted from some misapprehension, as we find nothing in the collector's letter with reference to any authority for his action.

However, as pointed out by plaintiff, an examination of those cases throws little light upon the problem confronting us here. Those cases related to containers which were imported *filled*, whereas the instant case relates to new drums, imported empty.

In the *Marx* case, *supra*, the merchandise was described by the court as "large cylindrical iron vessels or drums fitted with a bung closed by a screw cap. Two half-round iron hoops placed at the ends and two near the middle of these receptacles make it possible to move them conveniently from one place to another." They were imported filled with glycerin and were held to be properly classified by the collector of customs as "cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty" in paragraph 151 of the Tariff Act of 1909, which corresponds with paragraph 328 of the act of 1930.

The claim of the importer in that case that the drums should be admitted free of duty as usual containers of the imported merchandise was rejected.

In the *Garramone* case, the merchandise was described as "ordinary tin cans, commonly used in the transporting, holding, and preserving, until consumed," of fresh tomatoes and tomato sauce. The court there was of the opinion that "cylindrical or tubular tanks or vessels," which are enumerated in paragraph 151, *supra*, "should be made in part at least of metal, should be of so strong and permanent a construction as to be adapted for use as holders or containers after the contents first imported have been removed, should possess some appreciable value for that or other purposes, and should also be so constructed that their character and usefulness as containers would not be destroyed by the act of removing therefrom the contents first imported therein."

While the drums in the instant case appear to be sufficiently strong and well constructed as to be adapted for use as containers after their contents have been removed, and so constructed that their character and usefulness as containers will not be destroyed by the removal of their contents, it appears that they cannot profitably be reused, not by reason of their construction, but because the powerful chemical with which they are filled, after importation, for use as a weed-killing compound, renders them unsafe for reuse.

In the course of its opinion in the *Garramone* case, *supra*, the court referred with apparent approval to its earlier decision in the *Marx* case, *supra*, as follows:

In determining the construction to be given paragraph 151 we held in the Marx & Rawolle case that in view of the judicial interpretations of paragraph 152 of the act of 1897 to which the attention of Congress had been directed and of the proceedings which took place in Congress which resulted in the enactment of paragraph 151, it was the manifest legislative intent to provide that "not only cylindrical or tubular tanks or vessels for holding gas or liquids, but also all vessels of a similar character for holding any material, and whether such vessels were full or empty," should be subject to the provisions of said paragraph. The expression "all vessels of a similar character" refers to those cylindrical or tubular tanks or vessels to which the attention of Congress had been directed, which were, as stated in the opinion, in brief, to be "certain large-sized, strongly built cylindrical or tubular metal tanks or vessels for holding gas, and possibly liquid gases," the descriptive uses of which Congress extended from that of containers of "gas or liquid gases" to "liquids or other material," and the descriptive condition of which it likewise extended so as to include them whether "full or empty."

The court concluded that since the tin cans there in controversy were the ordinary containers used for holding tomatoes and tomato sauce, and that they were neither designed nor adapted for any other use, nor of any value apart from their contents, they should not be classified in said paragraph 151.

The *Bene* case, *supra*, involved strong sheet-iron drums, imported filled with binoxide of barium. The court there found that—

* * * both kinds of drums have some merchantable value after the removal of the binoxide of barium, and it is apparent from an examination of the samples that both are available for further use as receptacles. As the drums in question are strongly built metal vessels, the single completed use of which did not reduce them to rubbish or affect their status as containers, we think they are very clearly distinguishable from those which we considered in United States *v.* Garramone, *supra,* and United States *v.* Braun Chemical Co., *supra.* * * *

It may be noted that in *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T. D. 31596, referred to in the language quoted from the *Bene* case, *supra*, it was clearly pointed out that where it is necessary to cut apart cylindrical iron drums in order to remove their contents and, in so doing, render the drums of no commercial value, they are not dutiable as cylindrical or tubular tanks or vessels.

It is obvious that the rule applicable to drums, imported filled, such as those involved in the *Braun* case, *supra*, cannot logically apply to drums which are imported as new drums empty. As such, the latter are a recognized article of commerce and, since we find that they are cylindrical or tubular "vessels," designed for holding "gas, liquids, or other material," they clearly meet the call of the provision in paragraph 328, *supra*. Consequently, even if it were agreed that the imported drums answer the description of "hollow * * * ware" in paragraph 339, *supra*, and of "vessels, for holding gas, liquids, or other material, * * * empty," in said paragraph 328, the latter provision would appear to be the more specific one. Furthermore, it may be noted that the provision for hollowware in paragraph 339 is qualified by the

phrase "not specially provided for" which does not appear in paragraph 328.

Defendant invites our attention to the case of *G. E. Meissner* v. *United States*, 48 Treas. Dec. 592, T. D. 41269, in support of the collector's classification. Reference is there made to the definitions of "hollowware," as here set forth:

Bowl- or tube-shaped ware of earthenware, wood, or metal; now especially the last.—Oxford Dictionary.

Manufactured articles having a hollow interior; especially, cast-iron kitchen utensils, as pots and kettles.—Standard Dictionary.

Hollow vessels; a general trade name for hollow articles, such as cast-iron kitchen utensils, earthenware, and the like.—Webster's Dictionary.

It was there held, *inter alia*, that certain milk cans, used in transporting milk and measuring about 23½ inches high by 14 inches in diameter, with a capacity of about 40 quarts, were dutiable as hollowware in paragraph 339 of the act of 1922 rather than in paragraph 399 of said act which provides for "articles or wares not specially provided for, if composed wholly or in chief value of * * * aluminum."

An examination of the court's record in the *Meissner* case, *supra*, discloses that no claim was urged or considered that the merchandise should be classified as "cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty," in paragraph 328 of the act of 1922. Therefore, that case is clearly distinguishable.

Upon the record before us, we find and hold that the importation should be classified as "Cylindrical and tubular * * * vessels, for holding gas, liquids, or other material, whether full or empty," as claimed by plaintiff, and subjected to duty at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 328 of the Tariff Act of 1930, as modified by the supplement to the General Agreement on Tariffs and Trade, 85 Treas. Dec. 64, T. D. 52423. That claim in the protest is sustained.

Judgment will be entered accordingly.