(C. D. 1832)

F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 13, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub* Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: So-called "protective cream dispensers" were classified by the collector of customs as articles wholly or in chief value of metal in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff claims that the subject merchandise should be classified as "machines" in paragraph 372 of said act (19 U. S. C. § 1001, par. 372), as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T. D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem.

The competing provisions of the statutes above referred to read, so far as pertinent here, as follows:

Paragraph 397, as modified, *supra*—

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 397 <br> * | Articles or wares not specially provided for, whether partly or wholly manufactured: <br>    *      *      *      *      * <br> Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer: | * |
| * |    *      *      *      *      * <br> Other (except slide fasteners and parts thereof)_____ | * <br> 22½% ad val. |

Paragraph 372, as modified, *supra*—

At the trial, the above two protests were consolidated for hearing. The only witness in the case, Robert J. Marra, was called on behalf of the plaintiff. The substance of his testimony is that he is a chemical engineer and assistant plant manager of the plaintiff company. He identified a sample of the machine, which was received in evidence

as exhibit 1, and also a blueprint of exhibit 1, which was received in evidence as exhibit 2.

In describing the characteristics and uses of exhibit 1, the witness stated that the article is installed on the wall of an industrial plant. The main body of the article is filled with so-called "barrier cream," also known as "Kerodex," which, when in use, places a film on the hands of laborers in the plants to prevent oil, grease, or chemical material from coming in contact with the skin.

With the aid of exhibits 1 and 2, the witness described in detail the manner in which the article functions:

The drawing [exhibit 2] represents a cross-section through the bottom of the machine, which is the main operating portion. Referring to the print, a piston is formed in the bottom section which travels in a cylinder and that piston consists of Part "A" which is the inlet valve cap screw, Part "B" which is the inlet valve face, part "C" which is an inlet valve flapper.

Now all those parts put together comprise a piston which travels in the main section of Part "F" which is the container.

* * * as energy is applied to this device by the hand, to Part "H" which is the activating handle and nozzle, the piston travels in the cylinder creating a partial vacuum underneath the piston which causes the flapper, "C", to be pulled down from Part "B", the inlet valve face, and cream flows from the main part of the container, under the valve face into the evacuated area. At the same time Part "E" the discharge port body travels upward and exposes Part "I", which is an inlet port. The energy which has been applied to "H" not only causes the cream to flow in to the evacuated area, but it stores up potential energy in the part, "G" which is the nozzle plunger spring. When the manual energy is renewed when the hand is taken away from the device, the energy stored up in Part "G" is released, pushing part "H" down and then Part "C" the inlet valve flapper closes off the inlet valve face and forces the cream through Part "I" down through the port body and on to the hand. That in brief is the operating principle of the machine.

When asked if the device has any movable parts, the witness replied:

The parts that comprise the piston which I have already described as parts A B D, and also C, the discharge port body, "E" and the spring "G", the nozzle plunger spring.

All of the parts above described are, according to the witness, essential to the functioning of the device.

In explaining how the article, represented by exhibit 1, utilized energy, the witness replied:

The manual energy applies to the machine, applied to the machine, does two things; first, it creates a vacuum, a partial vacuum, under the piston which draws cream into the cylinder and, secondly, it stores up the kinetic energy which is applied to the nozzle plunger spring and stores up potential energy in that spring and when the kinetic energy is removed in the form of manual energy, the spring releases the energy and causes the cream to be removed through the port.

Further, the witness stated that "the potential energy stored up in the spring transmits motion to the piston, which causes cream to be ejected from the mechanism."

With respect to the nozzle plunger, the witness stated that it is merely an activating handle and, from that point, the device operates automatically.

The factual record is not rebutted nor contradicted in any way, and it is upon the facts disclosed by the record that plaintiff claims that the device is definitely a machine for tariff purposes, upon the authority of *H. T. Kennedy Co., Inc.*, and *Daniel F. Young, Inc.* v. *United States*, 33 Cust. Ct. 68, C. D. 1637. That case related to a device known as an "Aladdin rail lubricator." From an examination of that case, it appears that the device consisted of a hollow cylinder, from the bottom of which extended a curved spout or tube ending in a flanged opening with an adjustable tongue to control the size of the aperture. The mechanism was firmly clamped to the underside of a railroad rail between the ties, so that the lubricator was free of any contact with the ground. The hollow cylinder and spout were loaded with grease. The lubricator, then ready for use, was activated by the vertical motion imparted to the rail by the downward force exerted by each wheel of a train passing over the rail at the point where the lubricator was bolted to the rail. The upward and downward motion of the rails, when passed over by a train, was utilized, applied, or transmitted by virtue of the mechanical construction of the lubricator, causing it to apply lubrication to the flanges of the wheels of a passing train which, in turn, transferred the oil or grease to the edges of the rails on curved sections of railroad tracks in order to reduce friction and wear.

In the *Kennedy* case, *supra*, we cited the definition of a machine set forth in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, which reads as follows:

* * * a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion * * *.

We then referred to *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777, wherein our appellate court pointed out that a careful analysis of the *Simon* case—

* * * will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

In the *Kennedy* case, *supra*, we also made reference to the following cases, in which various devices had been held properly classifiable for duty as machines:

*United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. (Customs) 168, T. D. 49271, relating to aneroid barometers which utilize springs and

diaphragms, as well as other movable parts, to measure atmospheric pressure.

*United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235, involving vertical field balances in which the activating force resulted from magnetic influence.

*Shell Petroleum Corp.* v. *United States*, 3 Cust. Ct. 233, C. D. 243, wherein we held that so-called gravimeters, the function of which is to utilize and apply the force of gravity by employing mechanical devices, including levels, beams, scales, masses, and springs, were dutiable as machines.

Also, *Asiatic Petroleum Corp.* v. *United States*, 19 Cust. Ct. 3, C. D. 1058, in which we held that certain gradiometers, operated by the force of gravity and used to measure the gradient of that force, were likewise dutiable as machines.

It is clear from the record before us that the cream dispensers in controversy are mechanical contrivances which utilize, apply, or modify energy or transmit motion through the action of the piston and spring. It would seem of little consequence, therefore, that manual energy is first applied to activate the cream dispenser, for it is clear that after manual pressure on the plunger the device motivates itself. Note *United States* v. *August Merckens*, 17 C. C. P. A. (Customs) 318, T. D. 43742.

We have examined the case of *United States* v. *National Folding Box Co.*, 24 C. C. P. A. (Customs) 316, T. D. 48756, cited by defendant in its brief, but do not regard it as having any controlling effect here.

Applying the principles of decision in the cases relied upon to the undisputed facts of record here, we find and hold that the subject merchandise consists of machines within the meaning of that term, as used in paragraph 372, *supra*, for which duty at the rate of 13¾ per centum ad valorem is provided. The claim of plaintiff is, therefore, sustained and judgment will issue directing the collector to reliquidate the entries accordingly.