(C. D. 2046)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 26, 1958)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Certain imported bunk springs were classified by the collector of customs at the port of entry as manufactured metal articles, within the province of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and, accordingly, were assessed with duty at the rate of 22½ per centum ad valorem.

In a protest duly filed against such action, plaintiff claimed that said springs are properly dutiable either at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 369 of said act, as so modified, for parts of automobile trucks, or at the rate of 13¾ per centum ad valorem, within paragraph 372 of said act, as modified by the Torquay Protocol to said General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as parts of machines. Inasmuch, however, as no proof was adduced of record in support of the first alternative claim, and no argument advanced by counsel to further it, we deem the same to have been abandoned, and confine this decision to a consideration of whether or not the instant springs are parts of machines within the contemplation of paragraph 372, as modified, *supra*.

Insofar as here applicable, the competing tariff provisions read as follows:

Paragraph 397, as modified by T. D. 51802, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Other (except slide fasteners and parts thereof)_____ 22½% ad val.

Paragraph 372, as modified by T. D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other \* \* \* _____ 13¾% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

\*     \*     \*     \*     \*     \*     \*

Other_____ The rate for the article of which they are parts

The only evidence adduced at the trial was given by plaintiff's witness, Thor Henrikson, a consulting engineer for the Pacific Car & Foundry Co. of Renton, Wash., since 1949. He stated that after receiving the degree of mechanical engineer from a technical college in Sweden, in 1918, he was engaged in various steel enterprises until 1925, when he began his association with the Pacific Car & Foundry Co., a concern whose principal business is the building of railroad cars, but which also manufactures logging equipment, trucks, school buses, and other items.

The particular bunk springs here in issue are an invention of this witness. They are used in connection with a stake bunk, such as is shown in plaintiff's illustrative exhibit 1, in the operation of transporting logs from timber woods to dumps. The stake bunk itself is a horizontal section of metal with an upright or stake at either end, which is held in position by a cable or chain across the bunk, from one stake to the other. At least two such bunks are mounted on a skeleton logging railroad car, as shown in plaintiff's illustrative exhibit 2, or a trailer truck, to prevent the logs from rolling off during transportation. When it is desired to dump the logs, the cable on the far side is released, the stake on the dump-side drops, and the logs are pushed off the carrier. The stake is maintained in a downward position by the weight of the falling logs. When the last log has rolled off, the spring (depicted in plaintiff's exhibits 1 and 3) which is imbedded in

the stake bunk, returns the stake to its upright position. With the attaching of the cable to the stake on the opposite side, the stakes are again in position to receive a load.

In the opinion of this witness, the stake bunk is a mechanical contrivance which transmits motion. Energy is built up in the spring as the load is moved from the bunk and, when the stake is freed from the weight of the logs, the spring automatically returns the stake to its upright position. The tension or strength of the spring can be released or tightened by changing the position of the main hinge pin around which the spring is wrapped.

Henrickson further testified, on cross-examination, as follows:

X Q. Now, you say after the log rolls off then the stake spring returns to its former position, is that right?—A. Yes.

X Q. Well, would that be analogous, we will say, to a spring on the back of a door, like when you open the door and then when you release the door it springs back into position?—A. That is a good comparison.

X Q. Or in a more lighter sense, perhaps like a spring mattress or a chair cushion, not quite so——A. No; there you are comforting. The door you have to put energy into the door, and the door comes back as you pass through it. I think that is a better description.

X Q. Well, now, before, while a log is being unloaded does the stake become depressed, does it lean over?—A. Yes.

X Q. And do you have to press anything to release that so that it would go back into position?—A. Comes back automatically.

X Q. Just by leaving it alone?—A. Just by leaving it alone.

Although counsel for plaintiff also elicited from this witness evidence purporting to establish that a logging car is a mechanical contrivance which transmits motion, and that when equipped with stake bunks, the latter are essential parts thereof, it does not appear that plaintiff's claim for recovery herein is founded upon any such basis. Indeed, it seems questionable, even conceding the premise that stake bunks are parts of logging cars, that a railroad freight car is a machine for tariff purposes. Notwithstanding the presence of airbrakes, handbrakes, and wheels, a freight car is not, under the settled doctrine of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion." As acknowledged by the expert upon whose testimony plaintiff relies, a freight car merely accepts the motion of the locomotive which pulls it. Since plaintiff has narrowed the issue to the question of whether a spring stake bunk is a machine, within the foregoing definition, we do not deem it necessary to dwell further upon this point.

With respect to the spring stake bunk, plaintiff urges that it is—

* * * a mechanical contrivance consisting of movable parts, to wit: a spring, an adjustable pin and bar set-up in variable rows of holes on the main hinge pin

controlling the tension or strength of the spring, and a stake which moves from a vertical to a horizontal position and back automatically. The Spring Stake Bunk is certainly a mechanical contrivance in that it utilizes energy built up in the spring and transmits motion by returning the stake to a vertical position automatically through use of the spring.

Cited in support of this position are cases holding the following devices to be machines: Aneroid barometers (*United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. (Customs) 168, T. D. 49271); vertical field balances (*United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235); gradiometers and gravimeters (*Asiatic Petroleum Corp.* v. *United States*, 19 Cust. Ct. 3, C. D. 1058, and *Shell Petroleum Corp.* v. *United States*, 3 Cust. Ct. 233, C. D. 243); rail lubricators (*H. T. Kennedy Co., Inc., et al.* v. *United States*, 33 Cust. Ct. 68, C. D. 1637); protective cream dispensers (*F. W. Myers & Co., Inc.* v. *United States*, 37 Cust. Ct. 256, C. D. 1832); and so-called Tutch latches (*Linread Products, Inc.* v. *United States*, 39 Cust. Ct. 262, C. D. 1939).

In essence, it is the Government's contention that a spring stake bunk is too simple a device to be characterized as a machine. It is argued that "In the true sense of the word, it has no movable parts." Whatever motion is transmitted is the result only of the release of the energy stored up in the spring when the upright stake is moved to its downward position.

Indeed, it is apparent from this record that the only mechanical feature of a spring stake bunk which could characterize it as a machine, is the spring itself. Other than the spring, the movable parts of the device are really not interrelated, according to mechanical principle. Their positions are changed as they are manually set or released. They are the recipients of motion but they do not transmit it. Neither do they utilize, apply, or modify energy or force.

In the case of *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777, it was held, upon the ground of legislative ratification of judicial interpretation, that certain hand-operated devices for sharpening razor blades were machines within paragraph 372 of the Tariff Act of 1930. In commenting upon the definition of the term "machine" in the *Simon, Buhler & Baumann* case, *supra*, the court stated:

However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. For example, in Webster's New International Dictionary, it is said:

* * * According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer,

saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts, and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to lift or transport loads, etc.

Similarly, in *United States* v. *Associated Mfg. Co.*, 30 C. C. P. A. (Customs) 236, C. A. D. 238, wherein children's tricycles were held not to be machines, it was stated:

It has been held many times by this court that that definition, while correctly defining the term "machine," is a very broad one and it never was intended to mean that every mechanical contrivance which utilizes or applies or modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine. *United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A. (Customs) 367, T. D. 44616; *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777; *United States* v. *The Cottage Creamery Co.*, 22 C. C. P. A. (Customs) 290, T. D. 47346; *United States* v. *Race Co.*, 22 C. C. P. A. (Customs) 327, T. D. 47362; *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C. C. P. A. (Customs) 148, C. A. D. 184.

We do not consider that the action of the spring in returning the stake to its upright position is of sufficient complexity to impart to a stake bunk the character of a machine. The *reductio ad absurdum* of any holding to the contrary shows itself at once in the admitted comparison of the automatic return of the stake with the automatic return of a spring door. The simple kind of mechanical action involved in the release of the energy stored up in a spring, when in fact nothing more is accomplished than that something held in a downward position by a heavy weight is pulled erect, prompts us to agree with defendant that a spring stake bunk does not rise to the dignity of a machine. That being so, the spring itself, the only function of which is to create the automatic feature of the bunk, is not a part of a machine.

We have carefully reviewed the cases called to our attention by counsel for plaintiff but find little or no similarity between the relatively intricate mechanisms to which they were addressed, and the uncomplicated devices for which the instant bunk springs were imported.

Based upon the foregoing considerations, we find and hold that the claim of the plaintiff for classification of the bunk springs at bar as parts of machines, in paragraph 372, as modified, *supra*, is without merit, and that the collector properly assessed them with duty at the rate of 22½ per centum ad valorem, as articles of base metal, manufactured in whole or in part, as provided in paragraph 397, as modified, *supra*.

Judgment will be entered accordingly.