(C.D. 2068)

Pacific Coast Borax Co., Division of Consolidated Borax, Inc. Perryman, Majonier Co. *v.* United States

United States Customs Court, Second Division

(Decided February 19, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: This is an action for the recovery of excess duties alleged to have been assessed against an importation of metal soap dispensers. The merchandise in question was assessed with duty at the rate of 22½ per centum ad valorem, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for articles, composed wholly or in chief value of iron or steel.

The following alternative claims for classification of the instant dispensers have been advanced by plaintiffs in their protest or by amendment thereto:

In paragraph 328 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 64, T.D. 52423, as cylindrical and tubular tanks or vessels, dutiable at the rate of 12½ per centum ad valorem.

In paragraph 339 of said act, as modified by said general agreement, supplemented by Presidential proclamation, 83 Treas. Dec. 149, T.D. 51898, as hollowware, not including sanitary articles, dutiable at the rate of 2½ cents per pound and 7½ per centum ad valorem.

In paragraph 339 of said act, as modified by said Annecy protocol, as hollowware consisting of sanitary articles, dutiable at the rate of 2½ cents per pound and 7½ per centum ad valorem.

In paragraph 372 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as machines, not specially provided for, dutiable at the rate of 13¾ per centum ad valorem.

The pertinent portions of the foregoing provisions read as follows:

Paragraph 397, as modified by T.D. 51802, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

   \*      \*      \*      \*      \*      \*      \*

Other (except slide fasteners and parts thereof) _ 22½% ad val.

Paragraph 328, as modified by T.D. 52373 and T.D. 52423, *supra*:

Cylindrical and tubular tanks or vessels, for holding gas, liquids,
or other material, whether full or empty_____ 12½% ad val.

Paragraph 339, as modified by T.D. 51802 and T.D. 51898, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or
flat ware, not specially provided for (except articles composed
wholly or in chief value of tin or tin plate, electric flatirons,
fly swatters, illuminating articles, and household food grinding
or cutting utensils other than meat and food choppers),
whether or not containing electrical heating elements as
constituent parts thereof:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed of iron or steel and enameled or glazed with
vitreous glasses (except sanitary articles), not con-
taining electrical heating elements_____ 2½¢ per lb. and
7½% ad val.

Paragraph 339, as modified by T.D. 52373, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or
flat ware, not specially provided for, whether or not contain-
ing electrical heating elements as constituent parts thereof:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed of iron or steel and enameled or glazed with
vitreous glasses:
Sanitary articles_____ 2½¢ per lb. and
7½% ad val.

Paragraph 372, as modified by T.D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other &ast; &ast; &ast;_____ 13¾% ad val.

A sample of the importation is in evidence as plaintiffs' exhibit 1.
It is a metal container, concededly composed of iron or steel and enam-
eled or glazed with vitreous glasses. The article has a detachable lid
and is generally cylindrical in shape. Towards the bottom, it tapers
off sharply into an opening about 1¾ inches in diameter. A plunger-
type device, inserted through this opening, connects with a metal shaft
which extends to the top of the container and is held by a metal cross-
bar. A flanged bracket attachment at the back of the container,
having two holes on either side, permits it to be affixed to a wall or
other surface.

With the aid of a promotional diagram, plaintiffs' exhibit 2, plain-
tiffs' witness John R. Miller, a mechanical and marine engineer, hold-
ing a degree from the United States Naval Academy, described the
sample as a container for powdered soap, which functions in the
following manner:

\* \* \* Then the first operation to extract the soap from the dispenser is to place your hand on the bottom of the plunger, marked [on the diagram] item 1, which is right here—generally down in this fashion—push up and as you push up, if you will notice item number 1 has what we call a "metering head," and there are three slots cut in it. This metering head, upon noticing this diagram or this cut-away picture here, lifts the three slots up into the powdered soap section, wherein the soap collects in the three metering slots; this is with the plunger still in the "up" position. As you release your hand or let the plunger fall down, the metering slots return to the intercone section here, which is between the—well, its the intercone section in this 2-cone section here, and upon reaching the bottom part of the "throw," the soap in the metering slots is released to the bottom cone section. It still doesn't flow out, through, because the diameter of this metering block here is such that it prevents it from flowing through the second cone. Then, on the return stroke up, you get a release of the soap that was thrown down into the intercone section, and again the metering block goes up for another soap pick-up. So in this case, you only get a release of soap on the upward stroke.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

\* \* \* There is a rubber fixture here on the cross-arm, attached to the lower cone. When you push up, you generally strike the handle against this rubber piece here. \* \* \* this will jar the soap into the slot, should it not fall in there freely.

This is the article plaintiffs contend is provided for in paragraph 339, *supra,* as hollowware, and/or in paragraph 328, *supra,* as cylindrical and tubular tanks or vessels. The argument rests upon the initial premise that the instant soap dispensers are, generally, in the form of vessels, and, hence, by judicial construction, hollowware, but being cylindrical or tubular in shape, and having the capacity to hold a material, are more specifically the vessels provided for in paragraph 328, *supra.*

Granting the premise, there can be little quarrel with the conclusions. It is the unquestioned purport of settled law that the provision for hollowware is one which encompasses, not "all articles having hollow interiors, but only such as are in the form of vessels." *United States* v. *Ellis Silver Co.,* 16 Ct. Cust. Appls. 570, T.D. 43297, modified in essentials not here pertinent in *Frank P. Dow Co., Inc.* v. *United States,* 21 C.C.P.A. (Customs) 282, T.D. 46816; *United States* v. *F. Weber Co., Inc.,* 25 C.C.P.A. (Customs) 159, T.D. 49266. The term has been held to include such articles as conductors' boxes, miners' pails, and transport milk cans, *G. E. Meissner* v. *United States,* 48 Treas. Dec. 592, T.D. 41269, as well as aluminum containers for holding medicinal cigarettes, *W. X. Huber Co.* v. *United States,* 66 Treas. Dec. 759, T.D. 47416, and 71 Treas. Dec. 789, T.D. 48973.

It has also been held that cylindrical and tubular hollowware, designed for holding gas, liquids, or other materials, are more specifically provided for in paragraph 328, *supra,* than in paragraph 339, *supra. Norman G. Jensen, Inc.* v. *United States,* 32 Cust. Ct. 176, C.D. 1600.

It thus appears that if the articles at bar are vessels, they arc subject to the provisions of paragraph 339, as modified, *supra*, and, moreover, if considered to be cylindrical and tubular, are more specifically provided for in said paragraph 328.

The term "vessels" has come under judicial scrutiny in the case of *Foxboro* v. *United States*, 13 Cust. Ct. 326, Abstract 49868, in connection with paragraph 328, *supra*. It was there interpreted to include iron bottles or flasks containing quicksilver, having the outside dimensions of 14 inches in height and 5 inches in width, with a turned-in bottom and a flanged neck, into which was fitted an iron screw plug which served as a stopper. These flasks were cylindrical or tubular in shape. The following definition of the word "vessel" was quoted:

A hollow or concave utensil for holding anything; a hollow receptacle of any kind, often circular in form, as a hogshead, barrel, firkin, bottle, kettle, cup, bowl, etc. (Websters' New International Dictionary, 1936.)

Vessels are elsewhere defined as follows:

A hollow receptacle of any form or material, but especially one capable of holding a liquid, as a pitcher, bottle, vase, kettle, or cup. [Funk & Wagnalls New Standard Dictionary of the English Language, 1942.]

A hollow or concave article, as a cup, bowl, pot, pitcher, vase, bottle, barrel, tub, etc., for holding liquid or other contents * * * a receptacle or container. [The New Century Dictionary, 1946.]

Despite the fact that "vessel" is a word of general import, descriptive of many and varied articles, having the capacity to hold or contain as a receptacle, it is our considered view that the articles at bar are excluded from the term, as something more than vessels. In the coincidence of the bracket attachment for fastening to a wall or other surface, and the device for dispensing the powdered soap, there exists an article not within the normal understanding of the term "vessel." While, in the very broad sense, these objects might be said to be vessels for holding soap, the true nature of their function and purpose is lost in that general expression. Primarily, they are, not merely articles for holding, but as well articles for dispensing. Both features are of the essence with regard to the utility of the product; both serve to characterize it. Accordingly, it would seem that they are not of the class of articles contemplated by either the provision for hollowware or the provision for cylindrical or tubular tanks or vessels.

Much the same reasoning would serve to bar these articles from classification as cylindrical or tubular tanks in said paragraph 328, for, to the extent that they are more than vessels, they are also more than tanks.

As stated in *United States* v. *F. Weber Co., Inc., supra*:

We must therefore conclude that it has been settled by this court that only such articles as are in the form, generally, of vessels may be classified as hollow ware.

While the definition of the term "vessel" approved by this court is broad and may embrace a wide variety of articles, we cannot bring ourselves to the conclusion that a box 8½ inches long by 3 inches wide, and ⅞ of one inch thick, provided with outer and inner lids and a large number of compartments for holding paints and brushes, is embraced within the common meaning of the term "vessel"; and if it is not, such a box cannot, under the decision of this court in *United States* v. *Ellis Silver Co., supra,* be classified as hollow ware under the provisions of paragraph 339 of the Tariff Act of 1930.

It would require a wide stretch of the imagination to regard the involved articles as vessels, within the common meaning of that word, and we do not think that Congress ever contemplated that the term "hollow ware," as used in paragraph 339, should be construed so broadly as to embrace such articles as are here involved.

The quoted observations apply with equal vigor to the soap dispensers which are the subject of this action. Moreover, since the instant merchandise does not consist of hollowware, it cannot find classification within the provisions of paragraph 339, as modified by the Annecy protocol, *supra*, for sanitary articles.

Counsel for plaintiffs admit of the possibility that the subject dispensers are something more than vessels which are hollowware, by reason of the presence of the plunger and its connecting metering head, but assert that, if so, the mechanism for dispensing the powdered soap requires classification of the articles as machines, not specially provided for, in paragraph 372, as modified, *supra*. It is argued:

* * * Only in the event that the mechanism contained in exhibit 1 is considered as elaborate as that contained in the cream dispensers in the case of *F. W. Myers & Co., Inc.* v. *United States,* 37 Cust. Ct. 256, C.D. 1832, could the argument be successfully advanced that the exhibit 1 in question is not a cylindrical or tubular vessel or hollow ware. In that event it is respectfully submitted that exhibit 1 is dutiable under paragraph 372 as a machine just as the cream dispensers in the *Myers* case, *supra*, were held to be so dutiable.

We are not persuaded to accept this view. The presence, not the complexity, of the dispensing device is the factor which, together with the bracket attachment, removes the subject items from the category of vessels, and any inquiry into the method by which the dispensing element functions is irrelevant to that determination. Hence, it does not necessarily follow that if the involved articles are not vessels they are *ipso facto* machines.

Neither is there occasion for concluding in any event that the dispensers at bar are machines, not specially provided for, within the contemplation of paragraph 372, as modified, *supra*. A machine has been defined in general terms as "a mechanical contrivance for utiliz-

ing, applying, or modifying energy or force, or for the transmission of motion * * *." *Simon, Buhler & Baumann (Inc.) v. United States*, 8 Ct. Cust. Appls. 273, T.D. 37537; *United States v. Guth Stern & Co., Inc.*, 21 C.C.P.A. (Customs) 246, T.D. 46777; *United States v. L. Oppleman, Inc.*, 25 C.C.P.A. (Customs) 168, T.D. 49271; *United States v. J. E. Bernard & Co., Inc.*, 30 C.C.P.A. (Customs) 213, C.A.D. 235. The definition is recognizably broad, and not every contrivance which falls within its literal scope is, therefore, to be regarded as a machine for tariff purposes. *United States v. Guth Stern & Co., Inc., supra*; *United States v. Associated Mfg. Co.*, 30 C.C.P.A. (Customs) 236, C.A.D. 238. As applied to the instant merchandise, however, it is clear that giving to the definition its widest latitude will, nevertheless, not avail to encompass it. Energy or force is not utilized, applied, or modified by the device, nor is there any transmission of motion. Hand power, applied to the plunger, serves to raise the metering head or valve, and the release of hand power causes it to drop, by the simplest of physical principles, a gravitational pull. These articles cannot function to any extent except as hand power is applied or removed. And when it is, they are but the passive recipients of that power, not utilizing it in any manner whatsoever. In this respect, they are decidedly different from the cream dispensers involved in *F. W. Myers & Co., Inc. v. United States, supra*, wherein, it appearing from the evidence, as quoted by the court, that:

The manual energy applies to the machine, applied to the machine, does two things; first, it creates a vacuum, a partial vacuum, under the piston which draws cream into the cylinder and, secondly, it stores up the kinetic energy which is applied to the nozzle plunger spring and stores up potential energy in that spring and when the kinetic energy is removed in the form of manual energy, the spring releases the energy and causes the cream to be removed through the port.

the court was able to conclude:

It is clear from the record before us that the cream dispensers in controversy are mechanical contrivances which utilize, apply, or modify energy or transmit motion through the action of the piston and spring. It would seem of little consequence, therefore, that manual energy is first applied to activate the cream dispenser, for it is clear that after manual pressure on the plunger the device motivates itself.

Accordingly, we are of the opinion that the involved soap dispensers do not fall under the scope of any of the provisions contended for by the plaintiffs. They are properly dutiable, as assessed by the collector, as manufactured articles, composed wholly or in chief value of iron or steel, at the rate of 22½ per centum ad valorem, within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.