(C.D. 2227)

Nord Light, Inc. v. United States

United States Customs Court, Second Division

(Decided January 10, 1961)

*Siegel, Mandell & Davidson* (*David Serko* and *Joshua M. Davidson* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: An importation described on the consular invoice as "Pulleys with brass stem and plastic nuts with spool 5¼″

No. 2500–5A (bakelite and hoop-iron)" was classified by the collector of customs as articles or wares not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and assessed with duty at the rate of 22½ per centum ad valorem.

Plaintiff claims that the articles should be classified as machines in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem.

The pertinent text of the statutes above referred to is here set forth:

Paragraph 397 of the Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
Woven wire fencing \* \* \*

\*     \*     \*     \*     \*     \*     \*

Other \* \* \*_____ 22½% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:
Calculating machines specially constructed for multiplying and dividing_____ \* \* \*

\*     \*     \*     \*     \*     \*     \*

Other \* \* \*_____ 13¾% ad val.

At the trial, the following exhibits were received in evidence—

Plaintiff's exhibit 1—sample of the imported merchandise.

Plaintiff's illustrative exhibit 2—represents plaintiff's exhibit 1 with a length of cable as it is equipped when ready for use.

Plaintiff's illustrative exhibit 3—the same as plaintiff's exhibit 1, except that a portion of its barrel section has been cut out to illustrate the interior workings of the mechanism.

Plaintiff's illustrative exhibit 4—a card which has mounted thereon the various parts used in the makeup of plaintiff's exhibit 1.

Defendant's exhibit A—a page of the New York Times Magazine of November 9, 1958, which contains an illustration of a Lightolier product, describing its use with merchandise such as plaintiff's exhibit 1.

The various parts of exhibit 4 are described in the record as follows:

Number one is a pair of bushing covers. Number two consists of three metal pawls; number three consists of a wing nut; number four is a cotter pin; number five is a spring; number six is a spring washer; number seven is a ratchet

disc; number eight is a metal axle threaded at one end with a pressure plate in its middle and slit at the other end to allow for the insertion of the spring and also pierced to allow for the insertion of the cotter pin; number nine is a cover plate; number ten is a frame assembly consisting of a frame and two bushings. Number eleven is the barrel shown with a spring mounted in its correct position and exhibit marked A is an additional spring which has been added to this card to show what a spring looks like when it is not mounted in the barrel.

At the trial, two witnesses were called, both of whom appeared for the plaintiff; John Fedoruk, president of the plaintiff corporation, and Barnett M. Evens, a civil engineer. Both witnesses were well qualified from experience, observation, and training to testify regarding the character, construction, and functional qualities of the imported articles, and their testimony is not refuted.

The following information is derived from the testimony of the two witnesses—

The imported pulley (plaintiff's exhibit 1) is especially designed for and chiefly used with lighting fixtures illustrated in exhibit A. Through its use, the fixture may be lifted or lowered to any desired height and suspended there. It is designed to counterbalance lighting fixtures having a weight between 2 and 10 pounds; it operates, in reverse, on the same principles as those pertaining to the common roller window shade, both of which require manual effort in raising or lowering them.

The record discloses that, when the pulley is fully assembled and wound, the tightening of a wing nut activates the operation of three pawls in connection with the ratchet end plate. The wing nut also brings into action the metal pressure plate on the axle with the flat cavity in the pressure plate. This combination prevents the suspended lighting fixture from falling.

At one end of the barrel, there is a prewound spring; the spring is inserted into the axle and at the other end is attached to the barrel by a rivet; in its prewound condition, a wire or cord is inserted into the passage in the barrel also passing through a bushing at each end.

When the entire assembly has been centered on either a cord or wire, the purpose of the spring is to activate the barrel in such a way as to make it retract the wire or cord and thus contribute to the raising of the fixture.

When a lighting fixture is suspended, it may be brought to a lower level by drawing it down by hand. In doing so, the spring winds up in proportion to the length of the cord or wire which has been drawn down.

Based upon the facts of record, the issue is sharply drawn. Obviously, the pulleys in controversy are articles or wares not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of base metal, and properly fall within the purview of paragraph 397 of the Tariff Act of 1930, as modified,

*supra*, if not more specifically provided for as machines in paragraph 372 of said act, as modified, *supra*.

In the early case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, our appellate court held that a brewery mash filter "can not be regarded as a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion, and therefore in no sense can it be properly called a machine," citing lexicographic definitions of "machine," "mechanical," and "mechanism." That concept, with appropriate limitations, modifications, and refinements, has since been applied in a great many cases, with the courts holding that whereas all machines are mechanical contrivances, not all mechanical contrivances are machines. In *United States* v. *Guth Stern & Co., Inc.*, 21 C.C.P.A. (Customs) 246, T.D. 46777, to which further reference will be made, *infra*, the court set forth the definition found in Webster's New International Dictionary as follows—

* * * According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer, saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts, and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to lift or transport loads, etc.

With this background, the adversary parties have cited numerous judicial authorities in support of their respective contentions.

In its behalf, plaintiff cites the following cases in which various articles have been held to be properly classified as machines.

*The Durst Mfg. Co., Inc.* v. *United States*, 36 Cust. Ct. 220, C.D. 1778—ball cock assembly—part of a toilet-box mechanism.

*Metallizing Engineering Co., Inc.* v. *United States*, 36 Cust. Ct. 205, C.D. 1775—so-called wire control and straightener units—parts of a metal-spray gun used in applying metallic coatings to metal articles.

*Alfred Hornung* v. *United States*, 31 Cust. Ct. 126, C.D. 1558—step counters—mechanisms composed in part of wheels, gears, levers, and dials, to indicate the number of steps taken in walking.

*Linread Products, Inc.* v. *United States*, 39 Cust. Ct. 262, C.D. 1939—so-called Tutch latches—fastening devices for use on cupboard doors so constructed that by slight manual touch mechanical parts are put into operation to either close or open a door.

*F. W. Myers & Co., Inc.* v. *United States*, 37 Cust. Ct. 256, C.D. 1832—protective cream dispensers constructed with a piston and other movable parts.

*United States* v. *Guth Stern & Co., Inc., supra*—safety-razor blade sharpener—a device consisting of a frame and carriage, the two outer bars of the frame passing through the center, and wheels made of leather and carborundum attached to the carriage. In reaching its conclusion in that case, the court resolved any doubt which it may have entertained as to whether the article was a machine by the application of the rule of legislative ratification of judicial interpretation, citing *G. W. Sheldon & Co.* v. *United States*, 48 Treas. Dec. 650, Abstract 49972.

In its decision, the court referred to the definition of a machine in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, and said "* * * it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it."

With the exception of the *Guth Stern* case, *supra*, this court seems to have been influenced by the fact that the articles being considered by it in the cases cited by plaintiff not only had movable parts but that the articles were self-activating after being motivated by hand.

In support of the collector's classification, the Government cites various judicial authorities, some of which are discussed below, in which certain articles were held not to be machines.

*Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046—stake bunk springs consisting of a horizontal section of metal, between two attached uprights or stakes, held in position by a connecting chain or cable. The upright at either end may be released to a downward position for the removal of the logs, by disconnecting the cable. The spring which is imbedded in the end of the bunk causes the stake to revert to its upright position when relieved of the weight of the logs. The only mechanical feature of the device was the spring itself.

*Pacific Coast Borax Co., Division of Consolidated Borax, Inc.*, and *Perryman, Majonier Co.* v. *United States*, 42 Cust. Ct. 77, C.D. 2068— soap dispenser—a mechanism consisting of a plunger attached to a metering head or valve, which operates solely by the application or release of hand power.

*American Shipping Co. et al.* v. *United States*, 58 Treas. Dec. 1008, Abstract 13320—spring scales—being an ordinary perpendicular spring scale with a hook attached for weighing articles by suspension. Its front plate was a dial calibrated in ounces and fractions thereof, and attached to the rear of this dial plate was a metal case inclosing an ordinary spring fastened to a thin metal bar with a hook on the bottom.

*General Systems Service, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376—holders for looseleaf books. The function of these articles was to hold looseleaf sheets of paper, the mechanisms being the means by which the rings are opened, locked, or closed for the holding of papers.

*United States* v. *Associated Mfg. Co.*, 30 C.C.P.A. (Customs) 236, C.A.D. 238—children's tricycles, the power of motion being created by the pressing of the feet of the operator on pedals which were attached to the front wheel.

*M. Pressner & Co.* v. *United States*, 38 C.C.P.A. (Customs) 8, C.A.D. 431—slide fasteners, familiarly known as zippers.

*United States* v. *Klingerit, Inc.*, 17 C.C.P.A. (Customs) 472, T.D. 43931—metal valves of a specialized and complicated form, operated by hand and used in regulating the quantity of steam, gas, oil, water, or other liquids which may flow through them.

Another case which has come to our attention is *A. B. Coppersmith and J. S. Walker* v. *United States*, 43 Cust. Ct. 312, Abstract 63284, relating to so-called trip lever wastes, devices for restricting the flow of water from a bathtub, consisting of a metal pipe and coupling through which is suspended a plunger or stopper. Connected to the coupling was a so-called overflow plate with a handle, which latter was attached to a lever through a spring and a cam. In the course of our opinion in that case, we stated "It is not to be supposed that the mere act of raising and lowering the plunger by the elementary principle of lever and fulcrum could itself cause this article to be called a machine within the contemplation of the *Simon, Buhler* definition, as subsequently interpreted."

The authorities relied upon by the Government related to mechanical contrivances which did not utilize, apply, or modify energy or force, or transmit motion within the concept of the *Simon, Buhler & Baumann (Inc.)* case, *supra*, and hence were not machines.

In the cases cited by plaintiff, the devices which were held to be machines were, as above indicated, self-activating, after being put into motion manually, whereas the article the subject of this controversy is not self-activating and, when functioning, its operation is controlled by hand-power.

For the reasons stated, we find and hold that the merchandise here under consideration is not a machine within the meaning of that term, as it is used in paragraph 372 of the Tariff Act of 1930, as modified, *supra*.

The protest is overruled and judgment will issue accordingly.