(C.D. 2572)

Impact Container Corp.
Judson Sheldon International Corp. } *v.* United States

United States Customs Court, Second Division

(Decided September 20, 1965)

*Sharretts, Paley & Carter* (*Melvin E. Lazar of counsel*) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff* and *James S. O'Kelly,* trial attorneys), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: This is an action to recover excess duties alleged to have been assessed against an importation of aluminum containers. The merchandise in issue was classified by the collector of customs at the port of entry within the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for hollowware, not specially provided for, wholly or in chief value of aluminum and, accordingly, was assessed with duty at the rate of 3.5 cents per pound and 17 per centum ad valorem.

It is the claim of plaintiffs that said containers are more specifically provided for in paragraph 328 of said tariff act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 64, T.D. 52423, as "cylindrical and tubular tanks

or vessels, for holding gas, liquids, or other material, whether full or empty," dutiable at the rate of 12½ per centum ad valorem.

The facts in this case are not in dispute, nor is there any real quarrel with the proposition that the instant containers are both vessels and hollowware, and, if described by both competing designations, are more specifically provided for in paragraph 328, as modified, *supra*, than in paragraph 339, as modified, *supra*. What is brought in issue here is whether in contemplation of law the subject articles are the kinds of cylindrical and tubular vessels intended to be covered by the language of paragraph 328.

At the trial of this action, a representative sample of the merchandise was received in evidence as plaintiffs' exhibit 1. It was described by counsel for plaintiffs as being wholly or in chief value of aluminum, measuring 9.85 inches in length, 2.91 inches in diameter, with a neck opening of approximately 1 inch and a capacity of 32 ounces. Counsel for the Government accedes to this description.

An illustrative sample of one of the involved containers, after it had been filled with quick drying enamel, valve cup and spray head affixed, and then painted and labeled, was received in evidence as plaintiff's exhibit 2.

The case was submitted for decision upon said exhibits and the following agreed facts:

That these aluminum containers are imported empty. After importation, they—

* * * are filled in the United States under pressure with gas, liquids and other materials, including paint, germicides, oxygen, tire sealants containing high pressure propellants, bowling alley conditioner, high pressure fabric sizing used by commercial cleaning establishments, and concentrated high pressure type insecticides. After the containers are ⅔ full with paint or other gas or liquid, a valve cup and spray head are placed loosely on the container. The cup and spray head are raised and a metered amount of propellant (gas) is squirted into the container under pressure. The valve cup and spray head are then affixed to the container. A cover cap is then placed on the container and the container is painted and labeled.

    *        *        *        *        *        *        *

* * * The contents are applied by shaking the container and then pressing the spray head at the top of the container.

It is further agreed between the parties hereto that these aluminum containers are not refilled but are discarded after use by the ultimate purchaser.

Citing the cases of *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, T.D. 31210; *Foxboro Co.* v. *United States*, 13 Cust. Ct. 326, Abstract 49868; *Norman G. Jensen, Inc.* v. *United States*, 32 Cust. Ct. 176, C.D. 1600; and *Pacific Coast Borax Co.*, etc. v. *United States*, 42 Cust. Ct. 77, C.D. 2068, counsel for plaintiffs urges that the articles at bar are literally cylindrical and tubular vessels intended for use in holding various materials, including gas, within the purview of paragraph 328 and

more specifically described and provided for therein than as hollow-ware, not specially provided for.

It is the contention of counsel for defendant that the articles at bar are not the type of container which Congress meant to include within the language of paragraph 328, for the reason that by judicial construction this provision has been limited to such containers as are relatively large in size, can be effectively closed, and are capable of reuse as containers after their initial contents have been consumed. Counsel relies particularly upon the case of *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T.D. 31577, in support of this position.

Analysis of the several cases to which our attention has been invited by adversary counsel, as well as consideration of the principles expressed in several other decisions deemed relevant to the issues involved herein, leads to the conclusion that the arguments advanced by defendant are in the main well founded.

It appears that a provision for cylindrical or tubular tanks or vessels, in substantially its present form, was first enacted as part of paragraph 151 of the Tariff Act of 1909 and came before the court for construction in the *Marx* case, *supra*, in connection with an importation of iron drums containing glycerin. In holding that said drums were covered by the language of the provision, the court considered at length the legislative history of the paragraph and the type of container which initially prompted the enactment thereof and concluded that Congress thereby intended to embrace "not only cylindrical or tubular tanks or vessels for holding gas or liquids, but *all* vessels of a similar character for holding *any other material, and whether such vessels were full or empty*." [Italics quoted.]

Nevertheless, in the *Garramone* case, *supra*, when confronted with the problem of the dutiable status of ordinary tin cans of the kind commonly used in transporting, holding, and preserving until their contents are consumed and thereafter discarded, the same court was disposed to limit the scope of the rule of the *Marx* case to "large-sized, strongly built cylindrical or tubular metal tanks or vessels," "of such strength, durability, and weight as to adequately serve the purpose of a container not only for one but also for successive importations of a substance * * *." The court was of opinion that tin cans, which are usually destroyed when their contents are removed and serve no other useful purpose, were not the tanks or vessels covered by the language of paragraph 151 of the Tariff Act of 1909. In so concluding, the court stated:

While it may not be easy to state with precision the exact application to be given in future cases to the words under consideration in paragraph 151, nor is it necessary for the determination of this case so to do, yet, in view of the apparent misunderstanding as to the meaning which may be attached to the term "cylindrical or tubular tanks or vessels for holding gas, liquids, or other ma-

terial, whether full or empty," it may be observed that, consistent with our decision in the case of Marx & Rawolle [*United States* v. *Marx, supra*] and of this case, it would seem that such cylindrical or tubular tanks or vessels should be made in part at least of metal, should be of so strong and permanent a construction as to be adapted for use as holders or containers after the contents first imported have been removed, should possess some appreciable value for that or other purposes, and should also be so constructed that their character and usefulness as containers would not be destroyed by the act of removing therefrom the contents first imported therein.

Consistent with the views expressed in the *Garramone* case, *supra*, the court, in a case decided concurrently therewith, *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T.D. 31596, held that cylindrical iron drums, filled witht chloride of magnesium, which had to be cut into two parts for the removal of their contents, were not embraced by the provisions of said paragraph 151, for the reasons that the character and use thereof as containers was ended with the removal of the contents; "that thereafter such drums do not appear to be devoted to any useful purpose, or to be adapted thereto, or to have any value, or to enter into or become a part of the merchandise of this country for any purpose"; and that they were apparently not of durable construction.

By contrast, iron drums of sturdy construction, which are not destroyed by the removal of their contents, but are susceptible of reuse as containers, have been consistently held to be cylindrical or tubular tanks or vessels for holding gas, liquid, or other material, within said paragraph 151 or similar provisions of subsequent tariff acts (paragraph 127 of the Tariff Act of 1913, paragraph 328 of the Tariff Act of 1922, and paragraph 328, *supra*), even though the material with which they are originally filled, or intended to be filled, is of such noxious or peculiar character as to prevent their reuse as a practical matter. *Colby* v. *United States*, 3 Ct. Cust. Appls. 234, T.D. 32542; *United States* v. *Bene et al.*, 6 Ct. Cust. Appls. 523, T.D. 36145; *Foxboro Co.* v. *United States, supra; Norman G. Jensen, Inc.* v. *United States, supra.*

The distinction in tariff treatment between so-called single-trip containers and durable reusable tanks or vessels was urged upon our appellate court in the case of *Thos. Cook & Son-Wagons-Lits, Inc.* v. *United States*, 31 CCPA 32, C.A.D. 245, in support of the contention that certain light-gauge metal drums, containing cod-liver oil, were excluded from said paragraph 328, for the reason that, after removal of their contents, considerable work and expense were necessitated before the drums were in a fit condition for resale and reuse. Seemingly, the court inferentially affirmed the proposition that paragraph 328 did not embrace vessels which did not "survive their [initial] use, and become or rather remain useful and valuable articles

of commerce" (*Marx & Rawolle et al.* v. *United States*, 3 Ct. Cust. Appls. 94, T.D. 32359), in the following statement:

* * * We think Congress, in the enactment of paragraph 328, *supra,* intended to make dutiable, vessels like those at bar which were capable of reuse as containers for holding the material specified in the provision, although the reuse of such containers, in many instances, was not commercially practicable until they had been reconditioned by processes like those shown to have been applied to the instant drums. It obviously sought to protect manufacturers of similar products in the United States, and the provision was made that they were dutiable "whether full or empty." If they were full, they would necessarily require cleansing before reuse.

We are of opinion that the reenactment of this portion of paragraph 328 in successive tariff acts since 1909 without appreciable change in language constitutes legislative ratification of the judicial distinction between these two general types of vessels. *W. E. Sellers, etc.* v. *The Cronite Co., Inc.,* 45 CCPA 27, C.A.D. 668; *August Bentkamp* v. *United States,* 40 CCPA 70, C.A.D. 500; *United States* v. *Kawahara,* 15 Ct. Cust. Appls. 231, T.D. 42242.

Of course, it is obvious, as noted in the *Jensen* case, *supra,* that cylindrical and tubular vessels imported empty must first be filled before their usefulness as containers emerges. Although it is by now well settled that it is the condition of merchandise at the time of importation which governs classification, *United States* v. *The Winkler-Koch Engineering Co.,* 41 CCPA 121, C.A.D. 540, the mere fact that the cylindrical container is empty at that time does not necessarily establish that it is a paragraph 328 tank or vessel. If, at the time of importation, the articles possess a capacity for reuse after the materials with which they have first been filled are consumed, they are designed for holding "liquids, or other materials," within the contemplation of paragraph 328.

The classification of the articles at bar within the provisions of paragraph 339, as modified, is presumptively correct, *United States* v. *Victoria Gin Co., Inc., et al.,* 48 CCPA 33, C.A.D. 759, and it is presumed that the collector has found the existence of all facts necessary to support his action. *United States* v. *Marshall Field & Co.,* 17 CCPA 1, T.D. 43309; *United States* v. *John A. Steer Co.,* 46 CCPA 132, C.A.D. 715. Accordingly, it must be presumed that the instant articles in their imported condition were not designed as reusable containers. And there is no evidence deducible from the physical appearance of plaintiffs' exhibit 1 that it is designed or adapted for any other use than as indicated in the instant record, nor possesses any inherent value. Since the parties have stipulated that, after the contents of these aluminum containers have been used by the ultimate purchaser, they are discarded, it would appear that they are not intended for or capable of reuse. For all intents and purposes and despite the difference in composition and size, in respect to their character as containers,

these articles bear a striking resemblance to the tin cans which were held not to be cylindrical or tubular tanks or vessels in the *Garramone* case, *supra.*

While it is true that this court did observe, in *Pacific Coast Borax Co., etc.* v. *United States, supra*, that "cylindrical and tubular hollow-ware, designed for holding gas, liquids, or other materials, are more specifically provided for in paragraph 328, *supra*, than in paragraph 339, *supra*," citing the *Jensen* case, *supra*, we did not intend, especially in view of the type of article involved in the *Borax* case, *supra* (a reusable soap dispenser), to foreclose further consideration of such problems as are involved in the present instance.

We find the record in this case inadequate to sustain the contention that the subject aluminum containers are cylindrical or tubular tanks or vessels within the purview of paragraph 328, as modified, *supra*. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.