(C.D. 3172)

Impact Container Corp.
Judson Sheldon International Corp. } *v.* United States

United States Customs Court, Second Division

(Decided October 24, 1967)

*Sharretts, Paley, Carter & Blauvelt* (*Gail T. Cumins* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: The merchandise involved in the protests consolidated herein consists of aluminum cylinders which were assessed

with duty at the rate of 17 per centum ad valorem, plus 3.5 cents per pound, under paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as hollowware, not specially provided for, composed wholly or in chief value of aluminum. Plaintiffs claim that these cylinders should be classified as cylindrical and tubular tanks or vessels for holding gas, liquids, or other material, whether full or empty, within the provisions of paragraph 328 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, and supplemented by Presidential proclamation, 85 Treas. Dec. 64, T.D. 52423, and assessed with duty at the rate of 12½ per centum ad valorem. The statutory provisions involved in this case read as follows:

Paragraph 339 of the Tariff Act of 1930, as modified, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

\*　　\*　　\*　　\*　　\*　　\*　　\*

    Composed wholly or in chief value of aluminum_____ 3.5 cents per lb. and 17% ad val.

Paragraph 328 of the Tariff Act of 1930, as modified, *supra:*

Cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty_____ 12½% ad val.

The same merchandise and the same issues were involved in prior litigation before this court at which time plaintiffs' protest was overruled. *Impact Container Corp.* and *Judson Sheldon International Corp.* v. *United States*, 55 Cust. Ct. 180, C.D. 2572. The record in said case has been incorporated herein. Said case was submitted for decision upon the exhibits, consisting of one empty aluminum container with a 32-ounce capacity, one filled and equipped for spraying paint, and a stipulation of facts between the two parties regarding the uses of the importation. It was agreed that the importation consisted of empty aluminum containers which are filled with gas or liquids under pressure and closed with a valve cup and spray head. Such containers are used for the application of paint, germicides, oxygen, tire sealants, etc., by shaking the container and then pressing the spray head. It was also agreed between the parties that the containers were discarded after use and not refilled by the ultimate purchaser.

In rejecting plaintiffs' claim that the imported containers came within the purview of paragraph 328 as cylindrical and tubular tanks

or vessels, this court noted that judicial construction of paragraph 328 had established certain criteria for paragraph 328 articles and limited that provision to those which were substantial, relatively large in size, and capable of reuse as containers after consumption of the original contents.

This analysis was supported by a line of cases beginning with *United States* v. *Marx*, 1 Ct. Cust. Appls. 152, T.D. 31210, in which substantial iron drums containing glycerin were held to be classifiable within paragraph 151 of the Tariff Act of 1909, which paragraph closely resembles paragraph 328 in the Tariff Act of 1930. The same conclusions were reached in *Marx & Rawolle et al.* v. *United States*, 3 Ct. Cust. Appls. 94, T.D. 32359. In *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T.D. 31577, certain tin cans containing fresh tomatoes and tomato sauce were denied classification under said paragraph 151 due to the fact that they served no further useful purpose after the removal of their contents and hence were of a character unlike that of the containers in *United States* v. *Marx*, *supra*. Similarly, in *United States* v. *Braun Chemical Co.*, 2 Ct. Cust. Appls. 57, T.D. 31596, certain cylindrical iron drums, containing magnesium chloride, whose usefulness was ended when the contents were removed, both because they were not of durable construction and because it appears to have been the practice to slice the drums in half in order to remove the contents, were excluded from paragraph 151.

These criteria of size, durability, and potential reuse have been applied consistently. *Colby & Co.* v. *United States*, 3 Ct. Cust. Appls. 234, T.D. 32542; *United States* v. *Bene et al.*, 6 Ct. Cust. Appls. 523, T.D. 36145; *Foxboro Co.* v. *United States*, 13 Cust. Ct. 326, Abstract 49868. At no time have the courts employed a literal interpretation of paragraph 328 or its predecessors since such a reading would include an unlimited variety of containers clearly outside the intent of Congress.

In light of the stipulated facts regarding reuse, the court, in its application of the above criteria, concluded that the aluminum containers at issue were not such containers as came within the ambit of paragraph 328 of the Tariff Act of 1930.

Plaintiffs have now commenced a new action in an attempt to re-litigate the issues surrounding the classification of the imported aluminum containers.

In order to adduce further proof on the issue of reuse and in order to soften the impact of the stipulated fact, mentioned previously, that the instant containers were discarded after use, plaintiffs introduced in evidence the testimony of Mr. Dean Rockwell, president of the Impact Container Corporation, who has been associated with that firm since 1959. The Impact Container Corporation is engaged in

the manufacture and importation of pressure containers such as aluminum seamless aerosol containers and the packaging thereof. Previously, Mr. Rockwell was employed for 13 years by the Tube Manifold Corporation, manufacturers of pressure vessels, as vice president and general manager in charge of design and sales. Mr. Rockwell holds degrees in mechanical engineering and is a member of the Compressed Gas Association and the Chemical Specialties Manufacturing Association, serving on a number of committees which formulate standards for pressure containers, and submit them to the Bureau of Explosives from whence they are forwarded to the Interstate Commerce Commission for promulgation as regulations and specifications governing the transportation of pressure containers.

The witness stated that he was responsible for the purchase of the containers involved herein and was familiar with their manufacture and use. Upon entry into the United States, the cylinders are painted and filled with various aerosol products.

Samples of the 540 cubic centimeter size of aluminum container here at issue, as filled, were introduced in evidence as plaintiffs' exhibits 1, 2, and 3. These filled cylinders contained, respectively, a deodorizer and air conditioner, fire extinguishing chemicals, and tire inflating and puncture sealing material. The witness stated that the 360 cubic centimeter containers at issue were used by the Hercules Packing Company to hold a high pressure industrial type lubricant. The 220 cc. containers at issue were being used for a product which had not yet entered the market and which was in the process of being tested.

The witness stated that the instant aluminum containers were designed to hold pressurized contents and in this respect differed from ordinary tin cans. When shown certain three piece tin cans containing various spray products, the witness identified them as pressure containers for use in aerosol.

The following testimony touched on the issue of reuse:

Q. Mr. Rockwell, after the contents of these containers have been used up, can the containers be used again either for the same purpose or for other purposes?—A. Yes. These containers can be refilled. In many cases, they are refilled or reused. It is not generally the practice, however.

Q. Why?—A. Generally, the economics of the situation and the fact that the ultimate user does not want to be subjected to the returning of the containers results in a single trip container that is used only once. In certain cases of propane, they are refilled from time to time.

\* \* \* \* \* \* \*

On cross-examination, the witness further testified as follows:

Q. You testified that in some cases, though not frequently, these pressure cylinders are reused.—A. That is correct.

Q. Can you tell the court whether you know of your own personal knowledge that the merchandise covered by these shipments have been reused after the contents had been used up?—A. In this particular set of entries, represented by these 360 and 540 cc. containers, I doubt if they were ever reused.

Q. Would your answer be the same with respect to 220 cc. containers?—A. The 220 cc. containers, I again doubt if those were reused.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Q. It is not economically feasible once an item such as Plaintiff's Exhibit 2, once the contents had been used, it is not economically feasible is it, to clean, straighten out the cylinder if necessary, polish, repaint, and relabel and refill the can?—A. In the case of a fire extinguisher, it is possible to remove that valve and refill the item and reprocess it, but from an economic standpoint, it is not economically practical.

Q. And, in fact to your knowledge, the ultimate users buy these items like Exhibit 1, 2, and 3 and Plaintiff's Exhibit 1 in the incorporated case as a one-use item?—A. That is correct.

After reviewing the testimony adduced by the plaintiffs, we conclude that plaintiffs have again failed to show that the instant aluminum containers are such containers as come within the purview of paragraph 328. This is primarily due to the fact that plaintiffs have not shown that the containers are reusable in the sense in which reuse has been a determinative factor in prior cases. Plaintiffs' witness has, at best, indicated only the theoretical possibility of the reuse of the instant containers. The bulk of the testimony suggests that the reuse of the instant containers is commercially unfeasible and economically impractical. These factors alone, however, might not necessarily preclude the application of paragraph 328 as was pointed out in the cases of *Thos. Cook & Son-Wagons-Lits, Inc.* v. *United States*, 31 CCPA 32, C.A.D. 245, and *Norman G. Jensen, Inc.* v. *United States*, 32 Cust. Ct. 176, C.D. 1600.

In the *Thos. Cook* case, certain light gauge metal drums were included in paragraph 328 despite the fact that considerable labor and expense was necessary in order to make them fit for reuse. In the *Jensen* case, certain drums, imported empty and then filled with a powerful weed-killing compound, were held to be classifiable under paragraph 328 despite the fact that the nature of the contents prevented their reuse. We are, therefore, cognizant of the fact that the mere existence of certain impediments to the reuse of a container does not, *ipso facto*, require its exclusion from paragraph 328.

Here, however, the impediments to reuse are of a more serious nature than those which existed in the above-mentioned cases. Except for the magnitude of the restoration process in the *Thos. Cook* case and the presence of a noxious residue in the *Jensen* case, the containers therein

were in all respects the epitome of those containers which judicial construction had assigned to paragraph 328. They were substantial metal containers, used for transporting their contents and so constructed that their usefulness was not destroyed by the removal of their contents. In the instant case, the impediments to reuse arise from the very design and nature of the aluminum containers.

The primary emphasis in the design and use of the instant aluminum containers is in the dispensing of their contents. This is the end for which their resistance to internal pressure is featured and the reason for their being fitted with valves and spray heads. The focal point of their commercial existence is their use as applicators by the ultimate consumer, and it is the practical consequences of this which are controlling here. The major consequence is that these containers are, in the normal and reasonable course of events, discarded by the consumers. The impediment to reuse in this case is not a superficial factor outside the physical design and material qualities of the containers or the result of the wear and tear they undergo but rather goes to the functional nature of the container and the commercial context in which it is used. We are not convinced that the design characteristics and consumer usage of these containers contemplate or permit repeated usage. The character of the products as dispensers coupled with the evident acceptance of their perishability by the manufacturer leads us to this conclusion.

In sum, inasmuch as the reuse of the instant containers is not a commerical reality, is not economically and practically feasible, and is not consonant with their discardable nature, the containers are not classifiable within paragraph 328.

It is in this setting that we again note the resemblance of the instant containers to the tin cans which were held not to be cylindrical or tubular tanks or vessels in the *Garramone* case, *supra*. Like the cans of tomato paste, the instant containers appear destined for anonymous scrap heaps and like those cans the design and commercial handling of these containers appear to indicate an acceptance of that destiny.

In light of the above, we see no reason, at this time, to depart from the findings and conclusions reached in the incorporated case. All claims in these protests are, therefore, overruled.

Judgment will be entered accordingly.